## ELI PLUMMER *v.* MARGARET PLUMMER et al.

1. CHANCERY: DECREE VOID FOR FRAUD MAY BE ATTACKED COLLATERALLY.—A decree obtained by fraud is void both at law and equity, and may be so treated in any collateral proceeding in either forum; and hence the husband may, in a suit to recover property in the possession of the wife's vendee, show that a decree obtained by the wife against him for a divorce *a vinculo*, and adjudging the property to be hers, was obtained by fraud; and upon establishing his title, and the fraud in the decree, he will be entitled to recover without proceeding directly to annul the decree. Handy, J., dissented.
2. SAME: HUSBAND AND WIFE: DIVORCE: NOTICE WHERE DEFENDANT A NON-RESIDENT.—The Act of 1822, requiring that notice in suits for divorce shall be published for three months, when the defendant is a non-resident, is repealed by the Act of 1848 (Session Acts, page 148), which provides for a publication of notices for one month only in chancery cases.
3. STATUTES: CONSTRUCTION OF, IN DOUBTFUL CASES:—*Argumentum ab inconvenienti.*—When the true meaning of a statute is doubtful, a construction which has been adopted by the inferior courts for a long period of time, and under which many important rights have accrued, will not be disturbed.

ERROR to the Chancery Court of Adams county. Hon. Stanhope Posey, chancellor.

The plaintiff in error filed his bill in the court below, in which he alleged that, in 1843, he purchased with his own means a certain slave Louisa, and took a title to her in his own name. That said slave from that time continued and remained in his possession, and the possession and control of his family, until January, A. D. 1855, and during that period she had issue four children, whose names and ages are set out in the bill.

That said Louisa was a valuable house-servant, and by her labor contributed greatly, during the period aforesaid, to the support of complainant's family, and that her children were valuable and likely, and were with her worth, in 1855, the sum of $4500, though complainant, on account of his attachment for them, would not have sold them for a price greatly exceeding that sum.

That, in 1833, complainant was married to the defendant, Margaret Plummer, in the State of Pennsylvania, and that he lived and cohabited with her as his wife until August, 1849, and that two

children were the fruits of the marriage; that in 1839 he removed with his said wife and children to this State, and located in the city of Natchez; that at the time of his marriage, the defendant Margaret had no property, nor did she acquire any afterwards; that by his trade as a blacksmith complainant was enabled to procure a genteel and comfortable support for his family, and that up to August, 1849, he and the said Margaret had lived together in harmony.

That in the year 1849 he was induced, by the reports then circulating through the country, representing the high prices of the labor of mechanics, and the large quantities of gold found in California, to form the conclusion to emigrate thither for the purpose of bettering his fortune; that he was encouraged and countenanced in this determination both by his friends in Natchez and the said Margaret his wife; that he accordingly left Natchez in August, 1849, and did not return till June, 1855; that before he left, it was understood between complainant and his wife Margaret, that she and his two children should remain in the city of Natchez, and have the control over the said slave Louisa, for the purpose of receiving her hire, and applying it to the support of the family while complainant was in California.

That during his absence in California (which was by the consent and full approval of said Margaret), the complainant frequently corresponded with his said wife and children, and made them remittances of money, amounting altogether to $1260, which they received, and which, together with the hire of said slaves, was ample to support them.

But now, so it is, that the said Margaret, combining and confederating with Davis & Odell, and contriving with said confederates how to deprive complainant of said slave Louisa, and her four children, did, on or about the 24th June, A. D. 1854, in the name of Brown Cozzens, as her next friend, exhibit her bill in the Vice-Chancery Court at Natchez, against complainant, and therein and thereby falsely stating and setting forth, that, in the year 1843, this complainant and the said Margaret, chiefly with the means of the said Margaret, purchased said slave Louisa; and falsely stating that this complainant, in August, A. D. 1849, had deserted and abandoned the said Margaret and her children, against her will, and had gone to California, and had obstinately, wilfully, and con-

tinuously, been guilty of such abandonment and desertion from that time to the date of the filing of the bill; and praying for publication against the complainant as a non-resident, and for a divorce *a vinculo,* and that said slaves be decreed to the said Margaret, and that she might be allowed to have the care and custody of the said children.

The bill further alleges, that afterwards such proceedings were had in said cause, that an order was entered at Rules, directing publication of notice of the pendency of the suit to complainant, for four weeks. That at the succeeding term of said Vice-Chancery Court, upon proof that said publication of notice had been made in a newspaper for six successive weeks, said cause was set down for final hearing on bill, *pro confesso,* and the testimony of two witnesses, and a decree entered and enrolled, in accordance with the prayer of the bill.

The bill further alleges, that shortly after the date of said decree, to wit, in January, A. D. 1855, the said Margaret transferred said slaves, or pretended to transfer them, to the other defendants, Davis & Odell, and that the said Odell now has possession of them, and refuses to deliver them up to complainant, although the possession has been demanded of him. And the said Odell sometimes pretends that he is the owner of said slaves, and holds them by purchase from said Davis; at other times he pretends that he holds said slaves by purchase from Margaret Plummer, and that he has a good title under the said decree of the Vice-Chancery Court aforesaid; whereas, the complainant charges that the proceedings in said suit were irregular and void; that no notice of said suit, actual or constructive, was given to complainant; that the name of Brown Cozzens, as the next friend of said Margaret, was used without said Cozzens's knowledge or consent; that the witness Linden was misinformed and deceived as to the nature, object, and purpose of the said suit, and was told that Mrs. Plummer was only suing for the custody and guardianship of her children during complainant's absence in California; and that said witness was further deceived as to the legal import of the terms " deserted and abandoned," used in his deposition, and was made to believe that he was only testifying to the fact that complainant had, in 1849, left for California, and had not, since that time, returned.

It is further alleged, that the pendency of this suit was kept carefully concealed from the complainant and his friends, and that he had no actual notice of· it until the 27th of April, 1855, when he received a letter informing him of it, which letter is filed as an exhibit; that he, immediately on the receipt of the letter, started back to Natchez, and arrived there in the latter part of June, 1855; that on his return he found said slave Louisa and her children in the possession of Odell; that he demanded possession of Odell, and he refused to surrender them ; and that said Odell, the more effectually to prevent complainant from getting possession, had clandestinely removed them, and now has them in places unknown to complainant.

The prayer is for a specific recovery of the slaves, and for hire, "and for such other and further relief as the nature of the case may require." The record of the chancery suit for a divorce, is made an exhibit. This exhibit showed that the complainant had filed a bill of review in the Vice-Chancery Court, which had been dismissed. Margaret Plummer, Davis, and Odell, are made defendants. Each of these defendants separately demurred to the bill, and filed, in support of their demurrer, answers denying the fraud charged.

The demurrers were sustained, and the bill dismissed, and the complainant sued out this writ of error.

*J. Winchester*, for plaintiff in error.

The appellant filed his bill in the Circuit Court of Adams, on the chancery side, to recover the possession of a negro woman and her four children, alleged to have come to the possession of the defendant, Stephen Odell. The defendants demurred to the bill, and the circuit judge, applying the rule at law, dismissed the bill for a misjoinder of parties defendants.

That the decree of the Circuit Court is wrong, a statement of the case will make manifest.

It has been repeatedly held by this court, that the Court of Chancery, in this State, has jurisdiction of a bill for the specific recovery of slaves. *Hull* v. *Clark*, 14 S. & M. 187.

The demurrer admits that the plaintiff was the owner of the slaves ; that the defendant Odell was in the possession of them

under a claim of title from his co-defendants, G. Malin Davis and Margaret Plummer, the wife of plaintiff, based upon a decree of the Vice-Chancery Court for the Southern District of Mississippi, alleged in the bill to be void; first, for want of jurisdiction in the Vice-Chancery Court to pronounce the decree; or secondly, that it was obtained upon false and fraudulent allegations, and by fraudulent practice, and that the defendants combined together to obtain that decree for the purpose of defrauding the complainant out of said negroes.

If the demurrer admits the charges of fraud and fraudulent combination, I suppose that there can be no question that all the defendants are not only proper but *necessary parties.*

It does so, unless the answer, accompanying the demurrer, denying the fraud generally, shall have the effect of denying to the plaintiff a right to a hearing upon the question of fraud.

Such is not the office or purpose of the answer. It is a rule, established by this court, that before a defendant charged with fraud shall be permitted to demur, he must deny the fraud. A general denial of the fraud charged, permits the defendant to demur, and the answer has then performed its office.

If the plaintiff by his bill makes or states a case, which, admitting that he can prove the fraud, entitles him to a recovery against the defendants, then he is entitled to a full answer from the defendants and to a hearing upon bill, answer, and proofs. The question of fraud or no fraud is not decided upon the demurrer.

But it is alleged that the decree of the Vice-Chancery Court is void for want of jurisdiction. It was a divorce suit, and the jurisdiction of the court was special and limited in such case, and to authorize the court to pronounce a decree in such a case, all the prerequisites of the statute must be complied with.

It was a bill filed *ex parte* under the tenth section of the Divorce Law, Hutch. Code, 496, which provides that " it shall and may be lawful for the court, on bill filed and due proof that the defendant resides out of the State, or hath removed as aforesaid, *to order* a hearing on the facts charged in said bill, and thereupon pass a decree in the same manner as if the defendant had appeared and were present in court. Provided always, that a copy of the said order for hearing be published in one of the public newspapers of

this State, for the space of three months at least, before the day appointed for the said hearing."

No such order was made by the court, no such publication was made in this case; and without such an order and such publication, the court had no jurisdiction to pronounce the decree. The statute evidently contemplates an *ex parte* proceeding, and when the requisites of the statute are complied with, the court is authorized to pronounce a decree, which is to be final and conclusive, " the same as if the defendant had appeared and was present in court." The effect of the decree is quite different from that contemplated by the statute, which authorizes the citation, by publication, to an absent defendant to appear, answer, or demur; on which the absent defendant may, at any time within five years after the decree, appear and have the decree set aside, and where the decree can have no effect beyond the State.

In a divorce suit there are three parties, the plaintiff, defendant, and the public. Marriage is regarded not merely as a contract between husband and wife, but as a political *status*, or social relation, in which the public, as well as the offspring, have an interest, and the object of the publication, required by the statute, was to give notice to all interested in the suit, and until such notice was given, the court, by the express provision of the statute, had no power or authority to pronounce the decree; or, in other words, the court has no general authority to pronounce a decree of divorce, and has acquired no special authority under the statute.

In any view of this case, Davis and Mrs. Plummer were not only proper but necessary parties. Daniels, in his work on Practice, vol. 1, p. 329, thus states the rule : " We come now to the consideration of those cases in which it is necessary to make persons defendants to a suit, not because their rights may be directly affected by the decree, if obtained, but because, in the event of the plaintiff succeeding in his object against the principal defendant, that defendant will thereby acquire a right to call upon him, either to reimburse him the whole or part of his demand, or to do some act towards reinstating him in the situation he would have been in but for the success of the plaintiff's claim. In such cases, the court, in order to avoid a multiplicity of suits, requires that the parties so consequentially liable to be affected by the decree, shall be before

the court in the first instance, in order that their liabilities may be adjudicated on and settled in one suit."

Nor is it an objection that the husband sues the wife, " for (it has been well said) it is constant experience that the husband may sue the wife, or the wife the husband, in equity, notwithstanding, at law, neither of them can sue the other." Story's Eq. Pl. § 62.

It is difficult to understand upon what ground the court below sustained the demurrer in this case.

*W. T. Martin,* for defendants in error.

The first question which suggests itself is, what is the nature and character of the bill in this cause?

Is it a bill of review? It cannot be regarded as such, for it makes new parties, has no prayer for a review and setting aside of the decree, and prays for such relief as could never be granted in bills of review, such bills being in the nature of writs of error. Story's Eq. Pl. § 403; *Cole* v. *Miller,* 3 George, 89.

Besides the record shows that a bill of review had been filed, and upon demurrer, had been dismissed, and no appeal or writ of error had been taken.

It was urged in the court below, and may be true, that the allegations of the bill, touching the fraud in obtaining the decree of divorce, and want of notice of pendency of suit in said divorce case, was a mere anticipation of Odell's defence, that he had title under said decree.

Yet it is submitted, that if the decree of divorce was a nullity, as alleged in the bill, then Margaret Plummer is not interested in this cause, and is an improper party, and Davis is not interested in the matter.

There is no prayer for any relief, except against Odell: this shows that there was no reason for joining Davis and Margaret Plummer as defendants, who, from the allegations of the bill, are nowise interested in the question of the possession of the slaves or their hire.

But is this a suit to recover the slaves only? Then why is it sought indirectly to set aside the divorce decree? The bill shows Odell could not defend under the decree. It alleges that it is a

nullity. Then should Odell be taxed with costs of useless litigation about a nullity?

The divorce decree was rendered by a court of competent jurisdiction. Hutch. Code, 495, 496.

It is unreversed. It cannot be lugged into this, and, by indirection, be set aside, to the prejudice of any one claiming under it. The complainant had his remedy by appeal or writ of error. He prefers to let it stand, and take his chances of attacking it collaterally.

We insist that the decree in the divorce case was properly passed.

The Act of 1822, Hutch. Code, 496, sect. 10, provided, that in cases of absence of defendants, the order setting the case for hearing, should be published for three months. This was repealed in 1848, by the act providing, in broad and general terms, that publication for one month would be sufficient, "in any suit or matter," "in any of the courts in this State," "in which it may be necessary to notify such person or party by publication in a newspaper." Hutch. Code, 823.

The first and second clauses of that act apply to attachment cases; the third covers all cases.

Proper publication was made. The proof of Thomas and Linden, pages 17, 18, and 19, Record, fully sustain the allegations of the bill for divorce, and the decree was rendered accordingly.

In the Vice-Chancery Court at Natchez, almost every divorce granted has been upon the publication for one month, and no question has been raised till now of the regularity of the proceeding.

The complainant, it seems, does not contest the propriety of the decree as to the slaves, if the court had jurisdiction, and there was no fraud practised in obtaining the decree.

The bill is multifarious:

It improperly joins distinct and independent matters. Thus, an account of hire, and recovery of slaves, and the nullification of the decree of divorce. Story's Eq. Pl. § 271–286, 530; Mitford's Eq. Pl. 181, by Fremy.

It contains a demand of several and distinct and independent matters, against several defendants not alike interested, or not interested at all. Same authorities, and *Saxton* v. *Davis*, 10 Vesey,

80; *Ward* v. *Northumberland*, 2 Ans. 469; *Harrison* v. *Hogg*, 2 Vesey, Jr. 323.

The answers accompanying the demurrer deny the fraud and combination.

The charge of fraud is very general, too much so to require answer. No special combination, no specific acts of fraud are alleged against Odell & Davis, and a general sweeping charge of fraud will not do. The bill is still multifarious. Mitford Eq. 181; Story's Eq. Pl., note 5 to sect. 282; *Brinkerhoff* v. *Brown*, 6 Johns. Ch. R. 157.

Now the only charge of fraud, if it can be so called, against Odell & Davis, is found on page 4 of Record. It charges that there was fraud and combination. How? What did Odell & Davis do or say that was fraudulent? Nothing specific is charged, and if proof were made, still the *allegata* and *probata* must correspond.

Specific acts of joint fraud should have been shown by the bill. Story's Eq. Pl. 251–2, and authorities cited.

There was a clear misjoinder of parties.

Davis did not have the negroes in possession when the bill was filed. He was not interested in Odell's title, or the claim for hire. Nor was Margaret Plummer more interested. Story's Eq. Pl. sect. 237, 271–9.

Davis had no interest in the divorce decree, nor had Odell, when it comes to a question of setting aside that decree.

The decree of divorce is "*res adjudicata.*" It cannot be attacked collaterally; but if set aside or vacated, it must be done by a direct proceeding for that purpose. Nor by a speculative bill, and upon a presumption that some benefit or right may per possibility be claimed under it.

But it is insisted that the Chancery Court has jurisdiction to entertain a bill to recover slaves, because of the peculiar character of that species of property. Suppose this to be conceded, does it follow that where a court of competent jurisdiction has decided between Plummer and wife, in a suit for divorce and alimony, that she is entitled to the slaves, that, in another court, in a suit with other parties, complainant may collaterally attack that decree?

We think the court very properly sustained the demurrers, and dismissed the bill.

HARRIS, J., delivered the opinion of the court.

The object of the bill in this case is to recover certain slaves, alleged to be the property of complainant, and in the possession of the defendant Odell.

The bill alleges that complainant purchased the slave Louisa in the year 1843, and that the other slaves in controversy are the children of Louisa, born in the possession of complainant, and that said negroes have remained in his possession ever since, until January or February, 1855; that in the year 1849, complainant, with the consent and approbation of his wife (the defendant, Margaret Plummer), and for the purpose of bettering his fortune, went to California, leaving his said wife with two children, and leaving said negroes in her possession, and under her control, to aid in the support and maintenance of herself and children; that he frequently corresponded with the said Margaret, and from time to time made her remittances of money, amounting in all to about $1260, all of which she received, and which with the hire of said negro made ample provision for said Margaret and her children.

After having thus stated *his title* to the property in dispute in the *stating* part of the bill, he comes to the "*confederating part,*" which is formally framed, alleging a combination and confederacy between the defendants, to defraud and deprive complainant of the slaves in controversy. He next states the particular facts constituting the combination, confederacy, and fraud, to be as follows: That the defendant, combining, &c., to deprive the complainant of said slaves, filed her bill in June, 1854, against complainant, falsely stating that complainant, with her means, had purchased said negro woman Louisa; and that complainant had abandoned her in August, 1849, against her will, and had obstinately and wilfully continued such abandonment and desertion to the date of filing her said bill. Praying the usual order of publication, and for a divorce *a vinculo,* and a decree for the slaves, and for the custody of the children. The proceedings on said bill and final decree are stated, and the whole record made an Exhibit, A. The bill then shows that the said Margaret transferred and delivered the said slaves to the said Davis & Odell, and that Odell now has possession of them, and refuses to deliver them up, although demanded.

Next comes the charging part of the bill, in which the pretences of the said Odell are stated, and in which complainant charges that all said pretences of title are untrue; that his title is void; that said bill, proceedings, and decree are void; that no notice of the same, either actual or constructive, was ever given complainant; that the name of Cozzens, as next friend, was used without his knowledge or consent; that deception was practised on witness Linden, so as wholly to pervert the meaning of his evidence and language, and conveying a meaning never intended by him; and various other charges of fraud, concealment, and collusion; and other allegations, showing that there was no pretence for such a proceeding against complainant.

The bill shows that the notice required by the statute was published for the space of one month only before final decree, and that the whole proceeding was a gross fraud. Process is prayed against the defendants, &c., for answers; that Odell account for hire, and deliver up the negroes to complainant; and for subpœna, and for other or further relief, &c.

To this bill separate demurrers are filed by the respective defendants, stating various causes. Which several demurrers were sustained by the court below, and the bill dismissed; for which error this writ is prosecuted here. To understand properly the questions presented here, it is necessary to observe, that this is a bill in ordinary form for the recovery of slaves, alleged to be the property of complainant, and of peculiar value. The issue presented is as to the validity of complainant's title. The bill only seeks the recovery of the slaves and hire. This is all that is contained in the "*stating part*" of the bill,—*the complainant's title to the slaves in dispute*. This part of the bill constitutes "the real substance of the bill upon which the court is called to act." Story Eq. Pl. § 27.

It is not a bill to set aside a decree on account of fraud or want of notice, as supposed; but these facts are charged to avoid the defence, supposed to be relied on by the defendants, and are regarded in the nature of a replication, to a plea setting up such facts, in avoidance of a *case*, stated in the stating part of the bill.

Anciently, no notice was taken in a bill of the real or supposed defence which would be set up by the defendant. The defence

came out by plea, and the replication stated the matter in avoidance of the plea; and then the rejoinder denied the matter in the replication, and the parties were then at issue. When, for example, according to the old practice, a plaintiff, by his bill, stated a case for relief, if there had been a former decree on the merits, which he sought to set aside on account of fraud, in obtaining the decree, the bill did not, in any manner whatever, allude to the decree. It was left to the defendant to plead the decree, as a defence, barring the plaintiff's right. And the plaintiff then, by his replication, would reply that the decree had been obtained by fraud; by which the plaintiff would admit that the decree was a bar, if not capable of impeachment on the ground of fraud. The defendant would, by his rejoinder, avoid or deny the charge of fraud, and sustain the decree, and then the issue would be simply on the fact of fraud. In such a case, it is manifest that no answer, on the part of the defendant, to the charges of fraud, would be proper. For as no such charges were in the bill, no such discovery would be sought, or would be proper. In truth, if there was any answer in such case, it would overrule the plea. Story's Eq. Pl. sect. 676; Mitf. Eq. Pl. by Jeremy, p. 243, note (e); Beames Pl. in Eq. 2, 3, 6; Mitford Eq. Pl. by Jeremy, 74, 299.

But when a change of the frame of pleadings took place, and special replications, rejoinders, and surrejoinders, fell into disuse, and the bill, instead of relying solely on the matter constituting the plaintiff's original case, proceeded to anticipate the defence, and charged facts to avoid that defence (thus performing the double functions of a bill and of a replication, under the old practice), and required a discovery as to the matters charged; a change in the mode of making his defence became indispensable for the protection of the defendant, and he was compelled to put in a plea, which was, in part, both a plea and a rejoinder. That is, he was obliged to plead the bar, and negative the charges and circumstances which sought to avoid it. And as a discovery was sought in relation to these very matters charged in avoidance, he was also compelled to accompany his plea with an answer, fully discovering and responding to these matters. Story's Eq. Pl. sect. 678, 684; Mitford's Eq. Pl. 74; Story's Eq. Pl. sect. 31, and notes.

" If the bill states the decree, *only as a pretence of the defen-*

*dant,* which it avoids by stating, that if any such decree had been made, it had been obtained by fraud, the decree must be pleaded, because the fact of the decree is not admitted by the bill; and the charge of fraud must also be denied by the plea." Mitford's Eq. Pl., by Jeremy, 74, 301–4; Story's Eq. Pl. § 646, note 1, and authorities cited.

"If the bill *states the decree absolutely,* but charges fraud to impeach it, yet the decree must be pleaded; because the decree, if not avoidable, is alone the bar to the suit, and the fraud, by which the bar is sought to be avoided, must be met by negative averments in the plea; because, without such averments, the plea would admit the decree to have been obtained by fraud, and would therefore admit that it formed no bar. Where issue is joined upon such a plea, if the decree is admitted by the bill, the only subject, upon which evidence can be given, is the fact of fraud. If that should be proved, it would open the plea on the hearing of the cause, and the defendant would then be put to answer generally, and to make defence to the bill, as if no such decree had been made; the object of the plea is to prevent the necessity of entering into that defence, by trying first the validity of that decree. If the evidence of fraud should fail, the decree operating as a bar would determine the suit, as far as the operation of the decree would extend."

If the bill stated the title under which the plaintiff claimed, without stating the decree by which it had been affected, the defendant might have pleaded the *decree alone* in bar. If the bill stated the plaintiff's title, and also stated the decree, and alleged no fact to impeach it, and yet sought relief, upon the title concluded by it, the defendant might demur, because, upon the face of the bill, the title of the plaintiff would appear to be concluded by it. But, as in the form of pleading in equity, the bill may state the title of the plaintiff, and, at the same time, state the decree by which, if not impeached, that title would be concluded, and then avoid the operation of the decree by alleging, that it had been obtained by fraud, so the defendant may plead the decree with averments denying the fraud alleged; and these averments being the only matter in issue, they are necessarily of the very substance of the plea, and the decree, if obtained by fraud, would be no bar to the title set up by the plaintiff as the foundation of his bill, because it

would be void.    Mitford's Eq. Pl. by Jeremy, 303, 304; Story's Pl. Eq. sect. 680, note (1).

The question of fraud is thus collaterally raised and inquired into, to impeach the decree, instead of making it the original object of the bill, and afterwards filing a *second* bill, for the recovery of the property in dispute.

The practice is simple, avoiding multiplicity of suits, and consistent with the general principles of law and equity, which declare even judgments, obtained by fraud, wholly void.

In the case before us, the complainant, in the stating part of his bill, alleges a perfect title in himself to the property in dispute. He then proceeds, after the " *confederating part,*" to charge the various pretences and defences upon which he supposes the defendants rely, and to avoid them by charging fraud, &c., and calling for answer.

The defendants pretermit the *case* made by the bill, and demur to their own supposed defence as charged; and upon the idea that it is a bill to set aside a decree for fraud or want of notice, insist that the court has no jurisdiction, that there is a misjoinder of parties, that the bill is multifarious, &c. &c.

The demurrer, of course, admits the facts properly stated in the bill.    It would be difficult for us to conceive upon what principle (treating this as an ordinary bill to recover the title and possession of slaves) a demurrer to this bill could be sustained.    The bill first alleges the purchase of the slave Louisa with the money of complainant; that the remaining slaves in controversy are her children, born the property of complainant; that complainant, with the consent and approbation of his wife, went to California to better the condition of his family by the pursuit of his trade as a blacksmith; that he made provision for the support and maintenance of his wife and children in his temporary absence, by leaving these negroes in her possession and under her control; that from time to time he sent her money, amounting to $1260; that his wife, combining with defendants to defraud him, and deprive him of the title to the slaves, falsely and fraudulently accused him of abandonment and desertion, and fraudulently procured a decree of the court against him, without notice, actual or constructive, depriving complainant of the title to his slaves, and sold or transferred and delivered them

to defendants, Davis & Odell; and that Odell now has them; and prays for restitution of his slaves and hire. If these facts are true, he is certainly entitled to the relief he seeks.

It is suggested that his bill should have been filed, to set aside and annul the whole decree, and not for the recovery of the slaves alone. He might have elected this remedy, if he had desired it. But this court has no power to compel it, nor has it power to declare that a *void* judgment or decree shall have validity anywhere or under any circumstances. It may be attacked either directly or collaterally. If, as alleged, the decree against complainant was obtained by fraud and without notice, it was void *ab initio*, and gave no title to the negroes in dispute. The complainant might have instituted his action at law for their recovery; or, under the principles of chancery jurisdiction, that negroes have a peculiar value, *pretium affectionis*, he may invoke its jurisdiction for their specific recovery; and such decree would be no obstacle to his recovery in either jurisdiction. He need not set it aside, because it never had validity, as a decree, but was and is a nullity.

We think there is no misjoinder of parties under the allegations of the bill. Nor is the bill multifarious. It seeks a single object, —the recovery of the slaves, with their hire.

The views already presented perhaps cover the points properly presented by the demurrer. But as the question is, whether the Act of 1822, requiring that the order made for hearing in cases of divorce, shall be published for the space of three months before the day set for hearing, when the defendant is a non-resident, has been repealed by the Act of 1848, p. 148, reducing the time to one month, may become material, we regard it proper to express the opinion of the court on that subject. By the ordinary rules of construction,—regarding the Act of 1822 as having reference to a special class of cases,—its repeal by implication would not be favored. But yielding to the rule which, in doubtful cases, gives weight to the *argumentum ab inconvenienti*, and as the Act of 1848 has received this construction, and many cases and important rights have been affected thereby, we deem it safe to hold that the Act of 1848 applies to divorce cases, as well as all others. This construction has the further merit of giving uniformity to the rule

requiring publication, which seems to have influenced the legislative mind.

Let the decree be reversed, demurrer overruled, and leave to defendants to answer in sixty days.

HANDY, J., dissented, as follows:

I cannot agree with the majority of the court upon the point of the sufficiency of the bill in this case, as that question is raised by the demurrer.

It is a bill to recover slaves, alleged to be the property of the complainant. After stating the complainant's title, it proceeds to show the ground upon which the defendants claim title, and hold possession of the slaves, which is alleged to be in virtue of a decree in chancery, by which the defendant, Margaret Plummer, was divorced from the bonds of matrimony, from the complainant, her husband. That decree, if valid, appears to be an insurmountable obstacle to the complainant's claim; and, therefore, the bill proceeds to show that it is ineffectual, charging that it was obtained by fraud, and stating the particulars in which the fraud consisted, and hence concluding that it is no just obstacle to the complainant's claim. That this statement of the defendants' ground of title is an essential part of the bill, and not merely formal and as *a pretence,* is manifest from the fact that it is distinctly met and attempted to be obviated by positive charges, supported by facts stated, that the decree was obtained by fraud. And, indeed, it is most obvious, from the whole scope of the bill, that the *gravamen* of it is, to avoid the effect of the decree upon the complainant's claim, by the allegation that it is fraudulent and void. Assuredly, in such a case, it is not necessary that the defendants should set up the decree of divorce by plea or answer, in order to have the benefit of it; and if the scope and character of the bill, upon its face, be not such as to entitle the complainant to have it declared void, and set aside for fraud, it is competent to the defendants to take their objections to the sufficiency of the bill to justify the relief sought, by demurrer. It would be wholly unnecessary to set up the decree as the ground of the defendants' claim by plea or answer; for it is already fully stated, and attempted to be obviated, by the bill, and to set it up

by plea or answer, would be merely to state what appeared by the bill.

The bill is intended to *have the effect* of a bill to set aside a decree obtained by fraud; and yet no such relief is prayed for, nor could it be properly granted upon the frame and prayer of the bill. The effort is to have the decree treated as fraudulent and void, by simply obtaining a decree that the slaves are the property of the complainant, thereby setting aside the decree of divorce, indirectly and collaterally and so far as it affects the complainant's claim to the slaves, and leaving it in full force, as it affects the personal relations of the husband and wife.

Such a mode of proceeding is contrary to established rules of law and of chancery practice. If the complainant would avoid the decree of divorce for fraud, it was necessary to proceed directly to that end, and to pray for that relief. It is analogous to a bill to set aside a fraudulent conveyance, which forms an obstacle to the complainant's right. In such a case, the deed is directly sought to be set aside and removed as an impediment to the complainant's claim; and that done, his right may be enforced by other and independent steps, or, if necessary, the court may proceed in the same cause to enforce it. The question of the fraud of the deed is thus directly presented, and the decree, if in favor of the complainant, is directly that the deed be set aside and annulled; and, as a consequence, the complainant's right is maintained.

The propriety of this course of proceeding is clearly shown by the circumstances of this case. This is not a bill *to set aside* the decree for fraud, but its object is to have it *treated* as fraudulent and inoperative only to the extent that it affects the title of the complainant to the slaves in controversy. If the decree upon this bill be, that the complainant is entitled to the slaves,—which is the decree that must be rendered upon the bill as framed, if it is successful,—it proceeds upon the assumption that the decree of divorce is void. But yet it is only void so far as it affects the subject-matter of the suit,—the recovery of the slaves. What, then, would be the relations of the husband and wife? The decree of divorce is virtually held to be void in this proceeding; yet it is not set aside, and it stands in full force, except as to the title to these slaves derived from it. The parties stand divorced in all other respects,

because the decree is in full force, and not reversed or set aside, according to law. They may contract new marriages, after the time allowed for contesting the decree, and in all things act as parties legally divorced, except that the decree is void as to the complainant's title to these slaves; for the bill is not filed for the purpose of having the decree of divorce set aside. And thus the anomaly is presented, of a decree held void as to its collateral effects, but in full force as to its direct object of dissolving the marriage relation between the parties,—the parties absolutely divorced, but yet the rights directly flowing therefrom denied in a collateral proceeding, indirectly involving the validity of the divorce; and the result is, that, for the main purposes of the proceeding, they are divorced, but, in certain respects, that the relation of husband and wife continues.

For these reasons I think that the bill is insufficient, and that the demurrer was properly sustained.

I concur with the court upon the other point decided.

NOTE.—On the first argument of this cause, at the April term, A. D. 1858, this court held (Fisher, J., delivering the opinion), that the Act of 1822, regulating the publication of notice to non-residents, in suits for divorce, had not been repealed by the Act of 1848, and that the decree in the case of *Margaret Plummer* v. *Eli Plummer*, in the Vice-Chancery Court, was void, but a re-argument was granted, and the foregoing opinions were delivered.