GULLY, STATE TAX COLLECTOR, *v.* LUMBERMEN'S MUT. CAS-
UALTY CO.

(In Banc.   Mar. 16, 1936.)

[166 So. 541.   No. 31808.]

(In Banc.   June 1, 1936.)

[168 So. 609.   No. 31808.]

Lotterhos & Travis, of Jackson, for appellant.

**Leon F. Hendrick**, of Jackson, and **Eugene Quay**, of Chicago, Ill., for appellee.

Argued orally by **Fred Lotterhos,** for appellant, and by **Leon F. Hendrick,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellee is a mutual casualty company admitted to do business in this state. It has never paid a privilege license tax, although regularly having paid its premium taxes. Appellant sued for the privilege license taxes for the years 1929 to 1934, inclusive, but the trial court dismissed the suit.

Under chapter 157, Laws 1918, mutual insurance companies were fully dealt with and set apart into and under a separate and special law, and section 18 of the act expressly so provided. This chapter, without substantial change, was re-enacted as article 15, c. 127, Code 1930 (section 5269 et seq.) and the particular section above mentioned was brought forward as section 5289, Code 1930.

In the original act, section 19, brought forward as section 5290, Code 1930, and thus kept in full effect until 1932, there was this provision in respect to mutual companies: "Such mutual insurance companies shall pay

into the state treasury through the commissioner of insurance in lieu of all licenses and taxes, state, county, municipal and levee board, except ad valorem taxes on such real estate as may be owned by the company the following fees: Two and one-half per centum upon its premium receipts," etc. There could hardly be any broader language than that used, to-wit: "In lieu of all licenses and taxes, state, county, municipal and levee board, except ad valorem." And since this is a special and particular statute dealing with a special or particular branch of the insurance field, its particular terms, as to the special subject, control over general statutes dealing with the subject in general. Greaves v. Hinds County, 166 Miss. 89, 99, 145 So. 900.

But by the concluding sentence of section 111 (b), c. 89, Laws 1932, the general schedule of premium taxes therein laid upon insurance companies was for the first time made expressly to apply to mutual companies, so that thereupon for the first time any taxation distinction between mutual companies and others was put aside; and since the language of the preceding section, section 111 (a), is broad enough to cover mutual companies, and since there was left no existing special provision by which we can consistently withhold mutual companies from that general section, we must declare that the appellee is liable for the privilege tax of the years under the Laws of 1932, but not theretofore (Laws 1930, c. 88, sec. 103 (a).

Affirmed in part, reversed in part, and remanded.

**Ethridge, J.,** delivered an opinion, concurring in part and dissenting in part.

I concur in that part of the majority opinion which allows a recovery from the year 1932 to the date of the suit; but I dissent from the holding that amounts prior to 1932 cannot be recovered. I take it that but for section 5289, Code of 1930, the appellant could recover for each of the years sued for. I do not understand the majority to hold that the recovery could not be had in the

absence of a section like 5289, which reads as follows: "Except as provided herein, or as such companies may be hereafter expressly designated in any other law by express use of the word or description 'mutual,' no insurance companies organized or admitted to do business in this state under this article shall be subject to any other law of this state governing insurance companies." This section of the Code was brought forward from chapter 157, Laws 1918.

I do not think the section should be construed so as to prevent future laws enacted on the same subject from applying, under the ordinary rules of construction, to the subject-matter; and that the last law will be given full effect when its terms are inconsistent with the act, or when the language used, given its usual and ordinary meaning under the rules of construction, embraces the taxes here involved. The act should be construed only to take the mutual companies out of the operation of statutes then existing, and should not be applied so as to divert the state's revenue laws enacted subsequent to the enactment of that statute. To construe it as has been done by the majority opinion, in my judgment, puts a limitation or restriction on a future legislature, or on future legislation. This, I think, is clearly beyond the power of the Legislature. It is not a case of a legislature passing a law defining words, which definition may be applied to future laws, but it is a statute concealed in the great body of the laws designed for the purpose of giving a special class of insurance companies privileges and immunities not enjoyed by other companies doing a like business; and it is familiar knowledge that one legislature cannot bind future legislatures. In construing enactments passed after the said section was enacted, the court must give to the new law the full force and effect of the language used, giving to that language its natural and proper meaning.

In Stingily v. City of Jackson, 140 Miss. 19, 104 So. 465, it was held that a provision of a statute, if it was clear and unambiguous, "will be enforced although it

conflicts with one of the provisions of a prior statute, and the later statute not only contains neither a special nor a general repealing clause, but expressly provides that it 'shall not repeal any other statute relating to the subject-matter hereof.' "

In the case of Musgrove v. Vicksburg & Nashville R. Co., 50 Miss. 677, it was held that "the legislature has plenary power to enact laws or repeal them, unless prohibited expressly or by implication by the state or federal constitution. The power to repeal a law is as complete and full as the power to enact it. The repeal of a statute terminates all proceedings under it, unless rights have accrued which cannot be divested." This case is cited with approval in French v. State ex rel. Felding, 53 Miss. 651, 653, and Bradstreet Co. v. Jackson, 81 Miss. 233, 236, 32 So. 999.

In 12 C. J., page 806, sec. 238 (Constitutional Law), it is said: "The power to amend and repeal legislation as well as to enact it is also vested in the legislature, and a legislature cannot restrict or limit its right to exercise this power by prescribing modes of procedure for the repeal or amendment of statutes; nor may one legislature restrict or limit the power of its successors."

In 59 C. J. 900, sec. 501, subtitle Modes of Repeal, it is said: "In the absence of any constitutional restraint, a state legislature may exercise the power of repeal in any form in which it can give a clear expression of its will. There are two ways of repealing a statute or part thereof; one is by express terms, the other is by necessary implication. While ordinarily the legislature may be expected to employ express terms to give effect to its intent to repeal a statute, it is under no obligation to do so, and in a proper case a repeal may be effected by implication. The question of repeal is one of intent, and must be solved by determining as near as may be the intent of the legislature."

In 59 C. J. 900, sec. 502, title Statutes, it is said: "An express repeal is the abrogation or annullment of a previously existing law by the enactment of a subsequent

statute which declares that the former law shall be revoked and abrogated. A statute, or portion thereof, may be repealed directly by an express provision or declaration in a subsequent statute, provided the repealing statute conforms to the procedure prescribed by the constitution of the state. However, an express repeal has no more force and effect than an implied repeal. Also a clause in a statute purporting to repeal other statutes is subject to the same rules of interpretation as other enactments, and the intent must prevail over literal interpretation. Even words of absolute repeal may be qualified by the intention manifested in other parts of the same act; and, according to some authorities, an express declaration that a particular statute is repealed will not be given effect, where it is apparent that the legislature did not so intend; but according to other authorities, where a statute is specifically repealed a court will not inquire whether the legislature intended its repeal."

At page 904 of the same volume, section 508, it is said: "An implied repeal is one which takes place when a new law contains provisions which are contrary to, but do not expressly repeal, those of a former law. A statute, or a provision thereof, may be repealed by implication. Whether it has been so repealed is a question of legislative intent. While such a repeal is not favored, nevertheless it must be recognized and accorded effect where it is apparent that it was intended. Conversely, there is no room for repeal by implication where no legislative intent to repeal is indicated or expressed or an intent not to repeal is apparent or manifest. It has been held that repeals of statutes by implication are not to be worked piecemeal; but as hereinafter shown, repugnancy may effect an implied repeal only pro tanto to the extent of the repugnancy."

In Hart v. Backstrom, 148 Miss. 13, 113 So. 898, it was held that "Statutes which amend other statutes by implication are not within this provision [section 61, Constitution]; and it is not essential that they even refer to acts or sections which by implication they

amend." At page 34 of this Mississippi Report of this case, at page 901 of 113 So., the court said: "We think chapter 231 of the Laws of 1920, although amendatory of section 2933, Code of 1906 (section 5268, Hemingway's Code), is a complete scheme within itself, so far as the subject of legislation therein treated is concerned. It provides, in substance, that no reports of tax sales of land purchased by the state or individuals shall be made to the land commissioner until after the expiration of two years from the date of sale, or time allowed for redemption shall have expired; that all redemptions shall be attended to by the clerks of the chancery courts of the respective counties, and the sums received therefor paid into the county treasury, and disposed of as now provided by law; that, after a period of two years' time from the date of such sales, it shall be the duty of the chancery clerk to report all sales made of state lands which have not been redeemed, to the state land commissioner, to be dealt with as now provided by law."

It was held that the statute there involved repealed a former statute by implication.

In State ex rel. Knox, Atty. Gen., v. Wyoming Mfg. Co., 138 Miss. 249, 103 So. 11, it was held in the third paragraph of the syllabus, "Where the Legislature in a later act covers the entire scheme dealt with in former acts, the former act will be repealed by the later act, although there is some difference in the provisions of the two statutes. A subsequent statute not repugnant in its provisions to the former one, but clearly intended to prescribe the only rule in the case provided for, repeals the former statute. Mobile & O. R. Co. v. Weiner, 49 Miss. 725, 739."

To the same effect is Bell v. State, 118 Miss. 140, 79 So. 85; Vicksburg v. Sun Mutual Ins. Co., 72 Miss. 67, 16 So. 257; Ascher & Baxter v. Edward Moyse & Co., 101 Miss. 36, 57 So. 299; Board of Sup'rs of Clay County v. Board of Sup'rs of Chickasaw County, 64 Miss. 534, 1 So. 753; Mobile & O. R. Co. v. Weiner, 49 Miss. 725; My-

ers v. Marshall County, 55 Miss. 344; Plummer v. Plummer et al., 37 Miss. 185; Commercial Bank of Natchez v. Chambers et al., 8 Smedes & M. (Miss.) 9; Gibbons et al. v. Brittenum et al., 56 Miss. 232.

Measured by this rule, even if section 5289 was applicable to privilege taxes, it was repealed by implication by chapter 118, Laws 1926, section 134. It was brought forward in the Code by section 5289, but at the same session of the Legislature of 1930 there was enacted chapter 88, sections 103, 103a, and 103b, which imposed the tax here sought to be collected, and in which act the language is clear and unambiguous.

The majority opinion proceeds upon the idea that the Code section prevailed over this act of 1930; but it appears to me that it was not intended to be affected or repealed by the Code section. Section 15 of the act (Laws 1930, c. 210) adopting the Code provides: ''The Mississippi Code of 1930 shall take effect and be in force from and after the first day of November, 1930, and all laws of a general character not brought forward or embodied in said Code, except laws granting exemptions from taxation for a period of years, shall be thereafter repealed; but this shall not apply to any act of the present legislature which is not incorporated in said code.''

It is plain, therefore, that the Act of 1930, referred to, is not repealed, and must be given its natural legal effect measured by the language used by the Legislature therein.

Section 8 of the act adopting the Code provides: ''There shall be printed with the Mississippi Code of 1930 the laws of a general nature passed by the regular 1930 session of the legislature inserted in the proper places, the index thereto, suitable cross references, the annotations and historical notes, this act of adoption, the constitution of the United States, with the amendments, and index thereto, the constitution of the state of Mississippi, with the amendments and index thereto. . . . Said matters to be inserted in said code in the order in which the same now appear in the Dummy Code, or as

herein provided, or as the person appointed to supervise the publication of said code, or the attorney general, may direct. The title page of said code shall be in words and figures the same as that of the Dummy Code."

Section 13 of the act provides: "The acts of the legislature passed at this session shall take effect and be in force as prescribed in each of said acts, whether or not the same are inserted in this code, except as may be otherwise provided in said acts, and shall be printed in the session acts of this year."

It is manifest from these provisions that the privilege tax acts of 1930, above mentioned, were to remain in force and effect, and were not to be affected by section 5289, which deals solely, in my opinion, with the general insurance laws, as indicated in the original act, and not with the levying of privilege taxes for doing business in the state. Statutes such as section 5289 should be restricted by construction to the general purpose indicated by the act, and not extended to all laws that might affect such causes. The design of the Legislature in enacting chapter 157, Laws 1918, was to provide a scheme of supervision, and admission to do business in the state, and was not to affect the state's revenue acts thereafter provided.

Pursuing the same course of reasoning contended for and adopted by the majority opinion, such insurance companies would become the beneficiary of any legislative oversight in amending the insurance laws, or any laws that might directly or indirectly affect mutual insurance companies. The statute is contrary to the principles, at least, of section 87 of the Constitution, prohibiting the suspension of general laws for the benefit of individuals and corporations. It is unjust and unfair to permit such concealed exemptions and exceptions, hidden in the body of the voluminous statutes of the state, to give them special favors. There are seven thousand three hundred sixty-eight separate statutes in the Codes, and it is manifest that members of the Legislature can-

not have them all constantly in mind in passing upon legislation. The equal protection of the law, and the bearing equally the burdens of government, are favored processes of the law. I therefore think that section 5289 has no effect to exempt the appellee from the taxes involved in this suit.

**Smith, C. J.,** delivered a dissenting opinion.

I am of the opinion that the appellee is liable for the privilege taxes here in question for the years 1929 and 1930 and for the years 1933 and 1934, but I am in doubt as to whether it is liable for such taxes for the years 1931 and 1932.

**Anderson, J.,** delivered the opinion of the court on suggestion of error.

Upon consideration of the suggestion of error, the court requested briefs on this question: When a foreign casualty insurance company has been admitted into and is doing business in a state, does a statute thereafter enacted, imposing a tax on foreign casualty insurance companies but not on domestic casualty insurance companies, violate the equal protection clause of the Fourteenth Amendment to the Federal Constitution, as applied to foreign casualty insurance companies then doing business in the state? The request has been complied with.

In the original opinion appellee was held liable for the annual privilege license tax under chapter 89, Laws 1932. The statute (section 111) imposes an annual license tax on all foreign insurance companies of every kind doing business in this state, and expressly exempts from such license tax domestic insurance companies and burial associations. In section 111 (a) the schedule of licenses is set out, ranging from twenty-five dollars to two hundred dollars. The last paragraph of section 111 (b) provides that the statute shall apply to mutual and reciprocal in-

surance companies or associations. Therefore, beginning with the effective date of chapter 89, Laws 1932, foreign insurance companies are required to pay an annual privilege tax, while domestic insurance companies are exempt therefrom, and this provision applies to all mutual, including mutual casualty, companies.

It is argued that this inequality between foreign and domestic casualty companies denies to appellee the equal protection of the laws guaranteed by the Fourteenth Amendment to the Federal Constitution. To sustain that position appellee mainly relies on Hanover Fire Ins. Co. v. Carr, 272 U. S. 494, 47 S. Ct. 179, 71 L. Ed. 372, 49 A. L. R. 713. It was held in that case (headnote 1) that: "A foreign insurance company is unconstitutionally denied the equal protection of the laws, by imposing upon it a tax upon the full amount of its net receipts at the rate to which other personal property is subject, where the tax is not imposed upon domestic corporations, and personal property is assessed at only a small percentage of its value."

We do not decide this question; we do not reach it, because appellee is not in a position to raise it. We have not now, nor have we had during the period in question, any domestic mutual casualty insurance company licensed and doing business of that character in the state. The Old Colony Mutual Insurance Company, a domestic corporation, is authorized by its charter to do that character of business but has never applied for and secured a license for that purpose; furthermore, this company was only organized in January of the present year. Those facts are shown by the records in the office of the Insurance Commissioner. The office of Insurance Commissioner is a co-ordinate branch of the state government. The courts take judicial notice of its records and the contents thereof. Adams v. Standard Oil Co., 97 Miss. 879, 53 So. 692; Swann v. Buck, 40 Miss. 268; Witherspoon v. State, 138 Miss. 310, 103 So. 134.

Appellee, therefore, has been, and is now, without a

domestic competitor in this state. One who is not prejudiced by the enforcement of an act of the Legislature cannot question its constitutionality or obtain a decision as to its validity on the ground that it impairs the rights of others; it must be his rights that are impaired. 6 R. C. L. sec. 87, p. 89; Brown v. Smart, 145 U. S. 454, 12 S. Ct. 958, 36 L. Ed. 773; Red River Valley Nat. Bank v. Craig, 181 U. S. 548, 21 S. Ct. 703, 45 L. Ed. 994; Hooker v. Burr, 194 U. S. 415, 24 S. Ct. 706, 48 L. Ed. 1046; Dunn v. Love, 172 Miss. 342, 359, 155 So. 331, 92 A. L. R. 1323, and New Orleans, M. & C. R. Co. v. State, 110 Miss. 290, 305, 70 So. 355, 360. In the latter case, in discussing this question the court used this language: "One must be hurt before he complains."

Suggestion of error overruled.