289 So.2d 677 (1973)
MISSISSIPPI INSURANCE GUARANTY ASSOCIATION
v.
Evelyn Gandy, Commissioner of Insurance.
No. 47358.
Supreme Court of Mississippi.
December 3, 1973.
Rehearing Denied February 25, 1974.
Wells, Gerald, Brand, Watters & Cox, Frank T. Moore, Jr., Eugene A. Simmons, Jackson, for appellant.
A.F. Summer, Atty. Gen. by Maurice R. Black, Asst. Atty. Gen., Jackson, for appellee.
INZER, Justice:
The principal question to be determined in this case is whether the Mississippi Insurance Guaranty Association Act, Chapter 446, Laws of 1970, effective April 6, 1970, now Mississippi Code Annotated, Section 83-23-101 through Section 83-23-135 (1972), applies to claims against an insolvent insurer where such claims existed prior to the effective date of the act and where the insurance company was adjudicated to be insolvent on August 28, 1970, after the effective date of the act. We hold that it does.
*678 On September 10, 1971, Walter Dell Davis, Insurance Commissioner, brought this suit on behalf of certain claimants in the Chancery Court of the First Judicial District of Hinds County against the Mississippi Insurance Guaranty Association seeking to require the association to pay the claims under the provisions of Mississippi Insurance Guaranty Association Act.
The bill of complaint alleged that the Liberty Universal Insurance Company was declared to be insolvent by a Texas court and placed in receivership in that state on August 28, 1970. The bill of complaint also alleged that at the time it became insolvent the claimants on whose behalf the suit was brought were all residents of the State of Mississippi and held valid existing claims against the Liberty Universal Insurance Company, and under the terms of the Mississippi Insurance Guaranty Act, the association was obligated to pay said claims.
It was alleged that Marie M. Moran was a policyholder of the Liberty Universal Insurance Company, and while the policy was in full force and effect, she suffered a loss due to Hurricane Camille on August 17, 1969. Thereafter, the insurance company adjusted the loss and issued its check in the amount of $2,116.15 to cover the said loss, but due to the insolvency of the insurance company, the check was not paid.
On August 17, 1969, claimant Charles T. Pace likewise suffered a loss in the amount of $905.92, covered by a policy issued by said insurance company and that at the time of the loss the policy was in full force and effect. The insurance company issued its check to cover this loss, but due to its insolvency, the check was not paid.
On April 1, 1967, the company issued a policy to T.V. Garroway, and while this policy was in full force and effect, the holder suffered a loss due to Hurricane Camille in the amount of $386.16. The insurance company acknowledged the claim and adjusted the loss but before the loss was paid, the insurance company was determined to be insolvent.
On January 2, 1970, Juanita Camp was injured in an automobile accident with Woodrow Cooper who had a liability policy with Liberty Universal Insurance Company which had been issued on August 1, 1969, and was in full force and effect. After said injury, it was agreed between Juanita Camp and Liberty Universal Insurance Company that the insurance company would pay her $2,000 as damages in settlement of her claim. However, before the claim was paid, the insurance company was determined to be insolvent.
The bill of complaint alleged that all of these claims were "covered claims" under the provisions of the Mississippi Insurance Guaranty Association Act, that Liberty Universal Insurance Company became insolvent and was so adjudicated, and that the association was obligated to pay said claims under the terms of the act.
The association answered the bill of complaint and admitted that the claimants had valid claims against Liberty Universal Insurance Company at the time it became insolvent but denied it was liable for said claims. The association alleged that all the claims arose prior to the effective date of the act, and any payment thereunder would cause the act to operate retroactively where there is no declaration in the act that it so operate. It also alleged that it was not liable for the payment of any claims which arose out of a policy issued by the insolvent insurer after the last day of February 1969, because after that date Liberty Universal Insurance Company was not licensed to transact insurance in the State of Mississippi. The association also alleged that the act relied upon was unconstitutional for several reasons, not necessary to set out here.
The term of office of Walter Dell Davis as Insurance Commissioner expired on January 17, 1972, and Evelyn Gandy succeeded him in that office. Upon proper motion the cause was revived in the name of Evelyn Gandy.
The principal factual issue developed before the trial court concerned the claim of *679 Juanita Camp which arose under a policy issued by Liberty Universal Insurance Company after March 1, 1969. Walter Dell Davis testified that Liberty Universal Insurance Company had been authorized and licensed to do business in the State of Mississippi for many years. When the insurance company applied for the renewal of its license which would expire on March 1, 1969, he held up the renewal for the reason that it was determined that the company held certain securities which did not meet the requirements of Mississippi law. Mr. Davis said he made a trip to Texas where the company was incorporated and learned that the securities were acceptable under Texas law. He then held up the issuance of the license while negotiating with the company to furnish securities which would comply with the Mississippi requirements. After the expiration of its license, the company continued to do business in the State of Mississippi by servicing its policyholders and paying claims. Mr. Davis said he was under the impression that they were not going to write any new business in the state until their license was renewed. He also has testified that he knew that Liberty Universal was continuing to do business in Mississippi and doing so at the time the Mississippi Insurance Guaranty Act became effective. He further stated that he had no proof of insolvency during the period he was negotiating with the company and that no action was taken to stop the company from doing business in this state until it was adjudicated to be insolvent on August 28, 1970.
The chancellor found that the Mississippi Insurance Guaranty Act requires the association to be obligated "to the extent of covered claims existing prior to the determination of insolvency " and that all the claims here involved were covered claims including the claim of Juanita Camp that arose under a policy issued after March 1, 1969. He found that Liberty Universal Insurance Company was permitted to continue its operation in this state. It was authorized to do business in this state, and such authority was not revoked as required by law. He was of the opinion that the essence of the act is to deal with claims that were unpaid at the time of insolvency, and in order to properly understand or deal with a matter in the present, it is often necessary to take into consideration antecedent facts. It was his opinion that had the legislature intended that only those claims which arose after the effective date of the act would be covered, it would have so provided. A decree was entered finding the association liable for payment of all the claims.
On appeal the association argues two principal propositions. First, the Mississippi Insurance Guaranty Act is not retrospective in application and "covered claims" are limited to those claims arising after the effective date of the act. Second, the Mississippi Insurance Guaranty Act is unconstitutional for several reasons.
In regard to the question of the constitutionality of the Mississippi Insurance Guaranty Act, we are confronted with the question of whether appellant has standing or is in a position to raise this question. Appellee points out that what we have in this case is a novel situation of an agency created and set up by statute seeking to have the very law that created it declared unconstitutional. It has long been the law of this state that this Court does not pass upon the constitutionality of statutes at the instance of parties not in a position to question them. Certainly, the Mississippi Insurance Guaranty Association is not in a position to raise the constitutionality of the very statute upon which it depends for its existence. Quin v. State, 82 Miss. 75, 33 So. 839 (1903). It is likewise well settled that one not harmed or injured by statute may not question its constitutionality. Adams v. Bd. of Supervisors, 177 Miss. 403, 170 So. 684 (1936). One who is not prejudiced by the enforcement of an act of the legislature cannot question its constitutionality or obtain a decision as to its constitutionality on the ground that it impairs the rights of others. What the association is attempting to do in *680 this case is to obtain a decision by this Court not to protect its rights, but the rights of the insurance companies who are members of the association. None of these companies saw fit to intervene in this cause in order to raise the constitutional question. Gully v. Mutual Casualty Co., 176 Miss. 388, 166 So. 541 (1936). Although we are inclined to think that the Mississippi Insurance Guaranty Act is constitutional, we do not reach the issue on this appeal, since we are forced to the conclusion that appellant does not have standing to raise the constitutionality of the very act that created it.
The decisive question to be determined in this case is whether the claims involved are "covered claims" within the meaning of the act. Appellant urges that the association is only obligated to pay claims if such claims arise after the effective date of the act and if the insurer becomes insolvent after the effective date of the act. It is argued that to construe the act otherwise is to make its application retrospective when there is no clear intention of the legislature to make the act retrospective. In support of this argument it cites along with other cases McCullen v. State, 217 Miss. 256, 63 So.2d 856 (1953), wherein it is stated:
In a long line of decisions, beginning more than a century ago, this Court has consistently held that statutes will be held to have a prospective operation only unless there is clearly manifested an intention to make it effective retrospectively. (217 Miss. at 278, 63 So.2d at 864).
Appellee in answer to appellant's argument does not take issue with the fact that a statute is prospective in operation unless there is a clear intention otherwise, but contends that this is not a case for the application of the rule since the statute in question clearly states what claims are covered and leaves no room for the use of presumptive rules of interpretation. Appellee points out that this Court held in Dunn v. Grisham, 250 Miss. 74, 157 So.2d 766 (1963), that a statute is not invalidly retroactive merely because it draws on antecedent facts for the application where the statute affects the procedure and remedy only, and is a legitimate exercise of the police power of the state.
In Ott v. Lowery, 78 Miss. 487, 29 So. 520 (1901), this Court stated that the rule of construction was laid down in Adams v. Yazoo & M.V.R. Co., 75 Miss. at 275, 22 So. at 824, where it stated:
"A statute must receive such construction as will, if possible, make all its parts harmonize with each other, and render them consistent with its scope and object. The entire statute must be so read that the whole may have a harmonious and consistent operation. In the construction of a statute the object is to get at its spirit and meaning, its design and scope; and that construction will be justified which evidently embraces the meaning and carries out the object of the law, although it is against the letter and the grammatical construction of the act. In determining the proper construction of a statute, the entire legislation on the subject-matter, its policy, reason, as well as the text, must be looked to." (Emphasis added). (78 Miss. at 499, 500, 29 So. at 521).
We have no difficulty in finding the purpose and object of the statute here involved, since its purpose is clearly set out in the act. When the legislature passed the Mississippi Insurance Guaranty Association Act at its regular 1970 session, it set out the purpose of the act and stated that it is an act to provide a mechanism for the payment of "covered claims" under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of insolvency of an insurer and to assist in the detection and prevention of insurers' insolvency and provide an association to assess the cost of such protection among the insurers. It also provided that the acts should be liberally construed so as to carry out this purpose. The act provides *681 for and creates a non-profit, unincorporated legal entity to be known as the Mississippi Insurance Guaranty Association. All insurers to which the act applies are made members of the association as a condition of their authority to transact insurance in this state. The act applies to all kinds of direct insurance, except life, title, surety, disability, credit, mortgage guaranty and ocean marine insurance. The association is governed by a board of directors selected by the member insurers, and the duties and powers of the association are set out in the act. Among the powers and duties is the obligation to pay to the extent of covered claims existing prior to the determination of insolvency and arising thirty days after the determination of the insolvency, or before the insured replaces the policy or causes its cancellation within the thirty days of the determination. The obligation includes only that amount of the covered claims which is in excess of $100 and is less than $300,000.
The association is empowered to assess its member insurers amounts necessary to pay the obligations of the association including the expense of operation of the association on a formula provided in the act. In addition to the payment of covered claims, the directors of the association have the duty to aid in the detection and prevention of insurer insolvencies.
The act further provides that any person recovering under the act shall be deemed to have assigned his rights under the policy to the extent of his recovery, and such person is required to cooperate with the association to the same extent as he would have been required to cooperate with the insolvent insurer.
The act also provides that the rates or premiums charged for insurance policies to which the act applies may include an amount sufficient to recoup the amounts paid to the association by the member insurers.
After the act became effective on April 6, 1970, the association was duly formed and was operating at the time this litigation arose.
It is clear that the Mississippi Insurance Guaranty Association Act was enacted for the express purpose of protecting the public against financial loss to policyholders or claimants because of the insolvency of insurers. In order to achieve this purpose, the association was created as an instrument whereby economic loss which would otherwise result will be shared by policyholders in companies that remain sound. To achieve this desirable result in which the public interest is involved, the legislature expressly provided that the statute is to be liberally construed. Section 5 of the act, now Mississippi Code Annotated, Section 83-23-109(c) (1972), states or defines a covered claim as follows:
(c) "Covered claim" means an unpaid claim, including one of unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this article applies issued by an insurer, if such insurer becomes an insolvent insurer and (1) the claimant or insured is a resident of this state at the time of the insured event; or (2) the property from which the claim arises is permanently located in this state. "Covered claims" shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise.
The same section also defines an insolvent insurer and it states:
(d) "Insolvent insurer" means (1) an insurer authorized to transact insurance in this state either at the time the policy was issued or when the insured event occurred and (2) determined to be insolvent by a court of competent jurisdiction.
The Mississippi Insurance Guaranty Act is patterned after a uniform statute adopted in one form or another by nearly all of the states in the Union. Appellant points out that the Supreme Court of Ohio in *682 Smith v. Ohio Valley Ins. Co., 27 Ohio St.2d 268, 272 N.E.2d 131 (1971), held under similar facts that the definition of a "covered claim" did not include claims in existence before the effective date of their act, stating as a matter of English grammar the definition of a covered claim is in the present tense  not in the past. Also, that the statute speaks of an unpaid claim "which arises" not one which arose, and that it speaks of a claimant who is a resident at the time of the insured event  not a claimant who was a resident at such time. It concluded that any claim existing against an insolvent insurer which arose prior to the effective date of their act was not a covered claim and that to hold otherwise would make the act invalid retrospectively.
The Court of Appeals of Louisiana, in Louisiana Ins. Guaranty Association v. Guglielmo, 276 So.2d 720 (La. App. 1973), cert. denied, 279 So.2d 690 (La. 1973), held that "covered claim" in its statute, which is for all practical purposes the same as the Mississippi statute, includes claims which arose prior to the effective date of the act, where the insurance company becomes insolvent after the effective date of the act. The court in construing the act considered the holding of the Ohio Court and stated:
We disagree with the reasoning in Smith v. Ohio Valley Insurance Company, above, which held in effect that the word "arises" implies the present tense only.
Our own jurisprudence holds that in interpreting a statute, the courts are not bound by strict grammatical rules, but rather have the duty to determine true legislative intent. Edwards v. Daigle, 201 La. 622, 10 So.2d 209.
We likewise find the phrase "arises out of", as used in the definition of covered claims in this instance, relates not to verb tense or the time the claim arises, but rather to the source and nature of the claim. In this regard, we note that the last sentence of the definition of "covered claim" specifically excludes claims of certain designated types without reference to past or future tense. Construed together, we deem these provisions indicative of legislative intent to categorize the class or nature of claims covered, and not to fix the time when claims shall arise as a condition precedent to their falling into the classification of covered claims. Further support for this conclusion is found in Section 1382(1)(a), which recites: "The association shall be obligated to the extent of the covered claims existing prior to the determination of the insurer's insolvency, ... ." Thus, liability of the Association is not limited to claims arising after the effective date of the Act, but is extended to any claim antedating insolvency. To hold the contrary could lead to the absurd result that, in the case of an insurer being adjudged insolvent on September 2, 1970, only claims arising on that date would be deemed covered claims. This would not result in the liberal interpretation required by the Act, but would place a most restrictive meaning on the statute contrary to its clear mandate. (276 So.2d at 725, 726).
After a careful consideration of the act in the light of its object and purpose and applying our rules of construction, we find ourselves in agreement with the reasoning of the Louisiana Court and hold that the claims here involved were "covered claims" within the meaning of the act. The controlling factor is the insolvency of the insurance company after the effective date of the act and not when the claims arose. In so holding we are carrying out the object and purpose of the act and construing it in accordance with the intention of the legislature, although such construction may not be in accordance with the strict rules of English grammar. Furthermore, we are not giving retroactive application to the act, but merely drawing *683 on antecedent facts for its operation and to carry out its purpose.
The question relative to the claim of Juanita Camp is whether the Liberty Universal Insurance Company was still authorized to do business in the State of Mississippi after March 1, 1969. We are of the opinion that the chancellor correctly found that it was still authorized to do business although its license had not been renewed. A certificate of authority to transact insurance was issued to Liberty Universal in accordance with Mississippi Code Annotated, Section 83-1-23 (1972). The Commissioner had the power to revoke or suspend such authority, but in order to do so, he was required to take the steps provided for in Section 83-1-29. The Commissioner admits that he took no action in this regard and that he was aware that the company was still doing business in this state. It is true that in addition to being authorized to do business in the state, a foreign insurance company must hold a license to do business just the same as does a domestic insurance company. This license must be renewed each year and it is the duty of the Commissioner to satisfy himself whether the license should be renewed. Section 83-5-83 provides the procedure to be followed when an insurance company fails to comply with the requirements of the statute to have its license renewed. In this case the Commissioner merely held up the issuance of the renewal license and took no steps to revoke the authority of the company to transact insurance in this state. Under these circumstances, Liberty Universal Insurance Company was still authorized to do business in this state after March 1, 1969.
For the reasons stated, we are of the opinion that the case should be and is affirmed.
Affirmed.
RODGERS, P.J., and ROBERTSON, WALKER and BROOM, JJ., concur.