**IN THE SUPREME COURT OF MISSISSIPPI**
**NO. 97-CA-01144-SCT**

*BANK OF MISSISSIPPI, TRUSTEE OF MFC SERVICES LIQUIDATING TRUST*

*v.*

*MISSISSIPPI LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/21/97 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL B. WALLACE |
| | C. DELBERT HOSEMANN, JR. |
| | JOHN B. BEARD |
| ATTORNEYS FOR APPELLEE: | NEVILLE H. BOSCHERT |
| | ROBERT B. HOUSE |
| | KRISTINA M. JOHNSON |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND REMANDED - 10/29/98 |
| MOTION FOR REHEARING FILED: | 11/12/98 |
| MANDATE ISSUED: | 5/6/99 |

**BEFORE PITTMAN, P.J., ROBERTS AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. The Bank of Mississippi (hereinafter "Bank"), serving as Trustee for the MFC Services Liquidating Trust, filed a claim with the Mississippi Life and Health Insurance Guaranty Association (hereinafter "MLHIGA") for coverage of a Guaranteed Investment Contract (hereinafter "GIC") entered into between the MFC Services Pension Plan (hereinafter "Plan") and Exclusive Life Insurance Company (hereinafter "ELIC") which became insolvent in 1991. The MLHIGA declared that the contract with ELIC was excluded from coverage under Miss. Code Ann. § 83-23-205(2)(b)(vii)(1991) because it was protected by the Federal Pension Benefit Guaranty Corporation (hereinafter "PBGC"). Then, on November 7, 1995, the Bank filed a Complaint for Declaratory Judgment and Money Damages against the MLHIGA in the Circuit Court for the First Judicial District of Hinds County alleging that the MLHIGA was liable for

coverage of the GIC entered into with ELIC.

¶2. On February 29, 1996, the Bank filed a Motion for Partial Summary Judgment requesting that MLHIGA be held liable for coverage of the GIC, and on March 25, 1996, the MLHIGA filed a Cross-Motion for Summary Judgment on all issues. On June 26, 1996, the circuit court, now retired Circuit Court Judge William F. Coleman presiding, entered an order granting the Bank partial summary judgment on liability and held that the pre-1990 Act applied and that the GIC was covered thereunder. Next, on October 23, 1996, the MLHIGA filed a Motion for Partial Summary Judgment on Damages seeking its liability to be limited to $100,000 pursuant to the pre-1990 Act. Then, the MLHIGA requested, in a Rule 16 Conference, that Judge Swan Yerger, Judge Coleman's successor, reconsider Judge Coleman's June 26th Order granting the Bank partial summary judgment. On August 21, 1997, after reconsidering the Bank's Motion for Partial Summary Judgment and the MLHIGA's Cross Motion for Summary Judgment, the circuit court, Honorable Swan Yerger presiding, entered final judgment awarding summary judgment in favor of the MLHIGA and held: (1) that the 1990 Act governed the controversy; (2) that the GIC, as protected by the PBGC, was excluded from coverage pursuant to Miss. Code Ann. § 83-23-205(2)(b)(vii) (1991); and (3) that there was no Contract Clause violation by application of the 1990 Act.

¶3. Aggrieved by the circuit court's decision, the Bank appeals to this Court and raises the following issues:

**I. WHETHER THE CIRCUIT COURT ERRED IN CONCLUDING THAT THE 1990 ACT GOVERNED WHETHER THE GIC WAS COVERED BY THE MLHIGA.**

**II. WHETHER THE CIRCUIT COURT ERRED IN CONCLUDING THAT MISS. CODE ANN. § 83-23-205(2)(b)(vii) (Rev. 1991) PRECLUDED COVERAGE OF THE GIC BY THE MLHIGA.**

**III. WHETHER THE 1990 AMENDMENT TO THE MISSISSIPPI LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT VIOLATES THE CONTRACTS CLAUSES OF THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS.**

**IV. IF THE PRE-1990 ACT APPLIES, WHETHER MLHIGA'S LIABILITY IS LIMITED TO $100,000.**

## STATEMENT OF THE FACTS

¶4. The following is a summary of the undisputed facts in this case.

¶5. The Plan, adopted January 1, 1946, was a defined benefit employee pension plan within the meaning of 29 U.S.C. § 1002(2). Consequently, by law the Plan paid premiums for and had coverage with PBGC. In 1987, the Plan purchased a single premium guaranteed investment contract bearing No. CG01259A1A from ELIC. ELIC, at the time it sold the GIC to the Plan, was a member insurer of the MLHIGA within the meaning of Miss. Code Ann. § 83-23-209(h) (1991) and had paid all assessments due to the MLHIGA pursuant to Miss. Code Ann. § 83-23-217 (1991). The GIC is an unallocated annuity contract within the meaning of Miss. Code Ann. § 83-23-205(2)(a) (1991).

¶6. On October 9, 1990, MFC Services terminated the Plan although distribution of the Plan assets to its beneficiaries was not completed until December 1992. On April 11, 1991, the California Department of Insurance obtained a court order of conservation against ELIC, thereby rendering ELIC an impaired insurer

within the meaning of Miss. Code Ann. § 83-23-209(f). On November 18, 1991, ELIC for the first time failed to meet its contractual obligations under the GIC by missing the interest payment due on that date. On December 6, 1991, the California Department of Insurance obtained a court order declaring ELIC insolvent and placing it into liquidation, thereby rendering ELIC an insolvent insurer within the meaning of Miss. Code Ann. § 83-23-209(g). Effective December 6, 1991, MLHIGA agreed to participate with the National Organization of Life Insurance Guaranty Associations and the California Insurance Department in an Enhancement Agreement approved by the California Superior Court. On November 18, 1992, ELIC failed to meet its contractual obligation for the annual interest payment in the amount of $223,565.50 and the principal payment in the amount of $2,341,000.00, both of which were due on November 18, 1992, the maturity date of the GIC.

¶7. On December 11, 1992, as part of the distribution of Plan assets, the MFC Services Liquidating Trust Agreement (hereinafter "Liquidating Trust") was created to hold the GIC. The GIC was assigned to the Liquidating Trust on that date, and all other Plan assets were distributed as of that date. Although the Plan had paid premiums for coverage by the PBGC, excluding the value of the GIC, the assets of the Plan were in excess of the amount of benefits guaranteed by the PBGC as of the distribution date. Accordingly, the PBGC has not made any payments to the Plan's beneficiaries. Each former participant in the Plan received a certificate of participation in the Liquidating Trust, representing his interest in the GIC, as part of the termination and distribution of Plan assets. The Bank was appointed Trustee of the Liquidating Trust, and ELIC acknowledged assignment of the GIC to the Bank by correspondence dated December 24, 1992. The Liquidating Trust is independent of the Plan and the Plan's former trust, and the Plan retains no interest in the Liquidating Trust.

¶8. A Rehabilitation Plan for ELIC was approved and implemented on September 3, 1993, by the California Superior Court. Pursuant to correspondence dated December 29, 1993, accompanied by an "Election Package," the California Insurance Commissioner informed the Liquidating Trust:

> Now that the Rehabilitation Plan (Plan) for Executive Life Insurance Company (ELIC) has been completed, I am pleased to say that you have the opportunity to participate in this Plan designed to provide policyholders with maximum value . . . . The Plan became effective September 3, 1993, also referred to as the Closing Date . . . . Immediately prior to the Closing Date, ELIC's existing insurance and annuity contracts were restructured. The restructuring permanently adjusted the account value or benefit payment of each ELIC contract.

The Liquidating Trust elected to participate in the Rehabilitation Plan and to accept a restructured contract endorsement and assumption of the GIC by Aurora National Life Assurance Company (hereinafter "Aurora"). Neither the Plan nor the Liquidating Trust has been or will be reimbursed by the PBGC for the losses sustained by the failure of ELIC to pay the full sums due under the GIC.

¶9. On March 3, 1994, the Liquidating Trust filed a claim with the MLHIGA for the losses incurred by ELIC's failure to pay all sums due under the GIC. On March 18, 1994, MLHIGA informed the Liquidating Trust by correspondence that it would not pay the claim, stating:

> December 6, 1991, [was] the date on which Executive Life was placed into liquidation and as a result this Association became obligated to certain Mississippi policyholders of Executive Life. We have been informed by Arthur Andersen, consultants to the National organization of Life and Health Insurance Guaranty Associations, that this contract has a shortfall under the Enhancement Agreement

of approximately $847,998.24. . . . Section 83-23-205(2)(b)(vii) of the Mississippi Code of 1972, as amended, provides that this Association shall not provide coverage for any unallocated annuity contract issued to an employee benefit plan protected under the Federal Pension Benefit Guaranty Corporation. As a result, this Association has no statutory responsibility for the amount of the shortfall.

On November 7, 1995, the Plan filed this action against MLHIGA.

## STANDARD OF REVIEW

¶10. "We apply a de novo standard of review in reviewing a lower court's grant of summary judgment." *Seymour v. Brunswick Corp.*, 655 So. 2d 892, 894 (Miss. 1995) (citing *Short v. Columbus Rubber & Gasket Co.*, 535 So. 2d 61, 63 (Miss. 1988)). "A motion for summary judgment lies only when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law." *Seymour*, 655 So. 2d at 895 (citing Miss. R. Civ. P. 56(c)). Also, in the case sub judice, the parties stipulated to the above undisputed facts, and thus, the only questions before the trial court were questions of law. "Our standard of review is de novo in passing on questions of law as well." *Id.* (citing *Harrison County v. City of Gulfport*, 557 So. 2d 780, 784 (Miss. 1990)).

## DISCUSSION OF THE LAW

### I. WHETHER THE CIRCUIT COURT ERRED IN CONCLUDING THAT THE 1990 ACT GOVERNED WHETHER THE GIC WAS COVERED BY THE MLHIGA.

¶11. The Bank asserts that the circuit court erred by concluding that the 1990 Act governed whether the GIC was covered by the MLHIGA and, instead, contends that the version of the act in existence at the time when the GIC was entered into with ELIC should govern whether the GIC should be covered by the MLHIGA. The Bank contends that the circuit court mistakenly relied upon foreign decisions and ignored this Court's clear ruling in *Mississippi Insurance Guaranty Association v. Vaughn*, 529 So. 2d 540 (Miss. 1988). The MLHIGA, however, asserts that the circuit court did not err in concluding that the version of the Act in existence at the time ELIC was determined insolvent governed whether coverage of the GIC by the MLHIGA existed.

¶12. In 1985, the legislature enacted the Mississippi Life and Health Insurance Guaranty Association Act (hereinafter "MLHIGAA"). Mississippi Life and Health Insurance Guaranty Association Act, ch. 482, 1985 Miss. Laws 485 (codified as amended at Miss. Code Ann. §§ 83-23-201 to 83-23-235 (1991)). The Legislature stated the purpose of the original 1985 Act as follows:

> The purpose of this act is **to protect** policy owners, insurers, beneficiaries, annuitants, payees and assignees of life insurance policies, health insurance policies, annuity contracts and supplemental contracts, subject to certain limitations, against failure in the performance of contractual obligations due to the impairment or insolvency of the insurer issuing such policies or contracts. . . .

1985 Miss. Laws at 482, § 2 (emphasis added). The 1985 Act provided for the following coverage by the MLHIGA:

> (1) This act shall apply to direct life insurance policies, health insurance policies, annuity contracts, and

contracts supplemental to life and health insurance policies and annuity contracts issued by persons licensed to transact insurance in this state.

1985 Miss. Laws at 482, § 3.

¶13. In 1990, the Legislature made substantial amendments to the MLHIGAA restating its purpose and modifying the coverage of the MLHIGA. *See* Act of April 4, 1990, ch. 546, 1990 Miss. Laws 708. The Legislature amended the purpose of the MLHIGAA to provide as follows:

(1) The purpose of this article is **to protect**, subject to certain limitations, the persons specified in Section 83-23-205(1) against failure in the performance of contractual obligations, under life and health insurance policies and annuity contracts specified in Section 83-23-205(2), because of the impairment or insolvency of the member insurer that issued the policies or contracts.

1990 Miss. Laws at 546, § 1(emphasis added). The 1990 amendments to the MLHIGAA excluded from coverage unallocated annuity contracts that received protection from the PBGC as follows:

(2) (a) This article shall provide coverage to the persons specified in subsection (1) of this section for direct, nongroup life, health, annuity and supplemental policies or contracts, for certificates under direct group policies and contracts, and for unallocated annuity contracts issued by member insurers, except as limited by this article. . . .

(b) This article shall not provide coverage for:

. . . .

(vii) Any unallocated annuity contract issued to an employee benefit plan protected under the federal Pension Benefit Guaranty Corporation . . . .

1990 Miss. Laws at 546, § 2 (codified at Miss. Code Ann. § 83-23-205(2)(b)(vii) (Rev. 1991)). Section 12 of the 1990 Act stated that "[t]his act shall take effect and be in force from and after July 1, 1990." 1990 Miss. Laws 546, § 12.

¶14. The Bank contends that the 1985 Act should govern whether the GIC is covered by the MLHIGA since the GIC was purchased in 1987 and the 1990 Act specifically states that "[t]his act shall take effect and be in force from and after July 1, 1990." The Bank further contends that this Court's opinion in *Vaughn* should require the conclusion that the 1985 Act is the controlling act because the GIC was purchased before the effective date of the 1990 amendments to the MLHIGAA. We agree.

¶15. In *Vaughn*, this Court was presented the question of whether an accident and health insurance policy was excluded from coverage under the Mississippi Insurance Guaranty Act pursuant to Miss. Code Ann. § 83-23-105's exclusion of "disability" insurance from coverage. *Vaughn*, 529 So. 2d at 541. The *Vaughn* Court held that § 83-23-105's "disability" exclusion also provided for the exclusion from coverage of the accident and health insurance policy. *Id.* at 544-45. In reaching this conclusion, the *Vaughn* Court stated that the MLHIGAA enacted in 1985 would provide coverage of the accident and health insurance policy at issue, and the Court went further to state in a footnote that:

The policy and type of insurance at issue here is clearly within the coverage of this latter act. *See*

Miss. Code Ann. § 83-23-205(1) (Supp. 1987). *The only problem, however, is that Vaughn's policy was issued in May of 1983. The new act became effective April 9, 1985, and has no effect upon policies written prior to that date.*

*Id.* at 544 n.4 (emphasis added). The Bank correctly relies on the *Vaughn* Court's statement to contend that, analogously, the act in existence at the time the policy was issued should govern whether the GIC is covered by the MLHIGA and not the version of the act after the 1990 amendments because they did not become effective until July 1, 1990.

¶16. In contrast, the MLHIGA asserts that this Court's holding in *Mississippi Insurance Guaranty Association v. Gandy* provides persuasive authority that application of the version of the act in existence at the time of ELIC's insolvency would not be a retroactive application of the 1990 Act and that the 1990 Act should govern whether the GIC should be covered by the MLHIGA. We are not convinced. In *Gandy*, this Court addressed whether a property insurance claim arising prior to the enactment of the Mississippi Insurance Guaranty Act (hereinafter "MIGA") was a "covered claim" when the insurance company was declared insolvent after the MIGA had gone into effect. *Mississippi Ins. Guar. Ass'n v. Gandy*, 289 So. 2d 677, 680-82 (Miss. 1973). Expressly relying on the statutory requirement of liberal construction[1], the *Gandy* Court enforced the guaranty even though the policy had been issued and the claim submitted before the effective date of the Act. *Gandy*, 289 So. 2d at 678, 681. In rejecting the argument that such application would be a retroactive application of the law, the *Gandy* Court stated:

> After a careful consideration of the act in the light of its object and purpose and applying our rules of construction, we find ourselves in agreement with the reasoning of the Louisiana Court and hold that the claims here involved were 'covered claims' within the meaning of the act. *The controlling factor is the insolvency of the insurance company after the effective date of the act and not when the claims arose.* In so holding we are carrying out the object and the purpose of the act and construing it in accordance with the intention of the legislature, although such construction may not be in accordance with the strict rules of English grammar. Furthermore, we are not giving retroactive application to the act, but merely drawing on antecedent facts for its operation and to carry out its purpose.

*Id.* at 682-83 (emphasis added). We find that the Circuit Court "turned *Gandy* on its head" by ignoring the requirement of liberal construction and holding that the Legislature intended in 1990 to withdraw the statutory guaranty which had previously covered the GIC.

¶17. Furthermore, MLHIGA's assertions that the circuit court correctly relied on two recent cases from other jurisdictions, *Oklahoma Life & Health Insurance Guaranty Ass'n v. Hilti Retirement Savings Plan*, 939 P.2d 1110 (Okla. 1997) and *Henry L. Meyers Moving & Storage v. Michigan Life & Health Insurance Guaranty Ass'n*, 566 N.W.2d 632 (Mich. Ct. App. 1997), are unpersuasive. In *Gandy*, this Court showed that it was not bound by the constructions of foreign courts. *Gandy*, 289 So.2d at 681-82. There, the Mississippi Insurance Guaranty Association relied upon a restrictive interpretation of an identical statute by the high court of Ohio in *Smith v. Ohio Valley Ins. Co.*, 272 N.E.2d 131 (Ohio 1971). *Gandy* 289 So. 2d at 682. This Court rejected the Ohio interpretation and relied upon a liberal construction instead. *Id*. We rest on *Gandy* and *Vaughn* and find that coverage did exist. Therefore, this case is reversed and remanded.

## II. WHETHER THE CIRCUIT COURT ERRED IN CONCLUDING THAT MISS. CODE

**ANN. § 83-23-205(2)(b)(vii) (Rev. 1991) PRECLUDED COVERAGE OF THE GIC BY THE MLHIGA.**

¶18. The Bank asserts that the circuit court erred by concluding that Miss. Code Ann. § 83-23-205(2)(b)(vii) precluded coverage of the GIC by the MLHIGA because the GIC received no protection from the PBGC since it suffered a loss for which the PBGC paid no compensation. The Bank contends that the circuit court erred in concluding that the beneficiaries of the Plan were protected by the PBGC where the PBGC had made no payments for statutorily guaranteed benefits and will make no payments for losses suffered by reason of the Liquidating Trust's inability to meet its full contractual and fiduciary obligations. The Bank further relies on the Legislature's stated purpose in Miss. Code Ann. § 83-23-203(1) to contend that because the United States Congress only intended to provide limited protection to qualified pension benefit plans under ERISA through the PBGC does not establish that the Mississippi Legislature did not intend the MLHIGA to provide full protection against losses which impede a plan's ability to carry out its full contractual and fiduciary responsibilities to its beneficiaries.

¶19. The MLHIGA, however, contends that the terms of Miss. Code Ann. §§ 83-23-203(1) and 83-23-205(2)(b)(vii) provide a clear exclusion from coverage by the MLHIGA of the GIC issued by ELIC. The MLHIGA further contends that it is undisputed that the Plan maintained plan termination insurance coverage with the PBGC through the final distribution of Plan assets and that, as a result, it would be inconsistent with the purposes of the MLHIGA and the PBGC for the Plan to have state law guaranty association coverage to protect ERISA plan investments when the Plan itself already had PBGC coverage to protect the Plan beneficiaries.

¶20. In the case sub judice, the circuit court, rejecting the Bank's contention that the Plan did not receive protection from the PBGC because it received no compensation for its losses, concluded that the GIC purchased by the Plan from ELIC was excluded from coverage by the MLHIGA pursuant to Miss. Code Ann. § 83-23-205(2)(b)(vii) which excludes MLHIGA coverage for "[a]ny unallocated annuity contract issued to an employee benefit plan protected under the federal Pension Benefit Guaranty Corporation." The circuit court specifically held:

> The PBGC was created under Title IV of ERISA to guarantee the payment of certain benefits to retirement plan beneficiaries upon the termination of qualified pension plans. *See generally*, 29 U.S.C. §§ 1322, 1341, 1342. The PBGC receives termination insurance premiums from employers and protects beneficiaries of a qualified pension plan should the plan become insolvent and be unable to meet obligations to beneficiaries. Because the Plan was "protected" by the PBGC, the ELIC GIC falls within this exclusion from MLHIGA coverage.
>
> . . . .
>
> The Plan attempts to distance itself from the 1990 Act's exclusion by drawing a distinction between PBGC protection and eligibility for PBGC protection, arguing the Plan was eligible for protection but was not actually protected because it received no payment from the PBGC. The Plan was undisputedly protected by the PBGC from losses that might have made the Plan unable to meet its statutory minimum obligations to Plan beneficiaries. The Plan was protected throughout final distribution of Plan assets, but because the Plan was able to meet its minimum obligation to Plan beneficiaries, the PBGC was not required to make payments to the Plan or Plan beneficiaries. The Plan's effort to define "protection" so narrowly ignores the plain meaning of the statute.

In addition, the circuit court, in reaching its decision, relied on the Michigan Court of Appeals' decision in *Meyers Moving & Storage*.

¶21. In *Meyers Moving & Storage*, the plaintiffs were qualified pension benefits plans that had not been terminated but had suffered losses from GICs entered into with Inter-American Life Insurance Company of Illinois. *Meyers Moving & Storage*, 566 N.W.2d at 636. Inter-American was later declared insolvent, and as a result, the plaintiffs sought coverage of its losses by the state guaranty association. *Id.* Thus, the Michigan Court of Appeals was presented with the identical issue as in this case of whether a GIC purchased by a pension plan from an insurance company that later becomes insolvent is excluded from coverage by the state guaranty association if the pension plan is a qualified pension plan that receives protection from the PBGC even though the PBGC has made no payments to the pension plan to compensate for its losses. *Id.* The Michigan Life and Health Insurance Guaranty Association Act, identical to Miss. Code Ann. § 83-23-205(2)(b)(vii), provided for the exclusion from coverage by the state guaranty association of "[a]n unallocated annuity contract issued to an employee benefit plan protected under the federal pension benefit guaranty corporation." M.C.L. § 7704(3)(g) (1993). The Michigan Court of Appeals stated that the critical inquiry when applying M.C.L. § 7704(3)(g) was "whether plaintiffs' plans are 'protected' under the PBGC within the meaning of the language chosen by the Legislature in 1989." *Meyers Moving & Storage*, 566 N.W.2d at 637.

¶22. The court of appeals stated the protection provided by the PBGC as follows:

> When a pension plan is terminated, the PBGC may be called upon to provide benefits to the plan's beneficiaries. "Under ERISA's pension plan termination insurance program, PBGC guarantees that certain plan benefits will be paid to beneficiaries even if a plan terminates with insufficient funds to make payments." . . . The PBGC guarantees the payment of all nonforfeitable benefits, other than benefits becoming nonforfeitable solely on account of the termination of the plan. 29 U.S.C. § 1322(a). Congress has established a maximum guaranteed benefit that is covered by the PBGC. See 29 U.S.C. § 1322(b)(3). . . .

*Id.* The plaintiffs argued "that their plans [were] not protected for purposes of § 7704(3) because the PBGC did not protect plaintiffs from their losses." *Id.* The court of appeals, however, observed that the "plaintiffs' employees' pension benefits remain protected as Congress intended that they be protected under [ERISA], and that, as a result, the Legislature did not intend the unallocated annuity contracts to be 'covered' within the meaning of § 7704(3)(g)." *Id.* The *Meyers Moving & Storage* Court specifically stated:

> Congress only intended that the PBGC guarantee the payment of benefits to participants and beneficiaries of pension plans that have been terminated. The guaranty provisions of the ERISA do not contemplate the payment of PBGC benefits when a particular asset within a pension plan fails. The PBGC benefits are available only if the plan itself fails.
>
> . . . The fact that the plaintiffs have not terminated their plans and their participants have not received payment of guaranteed benefits from the PBGC does not mean that the pension plans involved in this case are not protected by the PBGC. Until the plans terminate, the plan sponsors continue to maintain the responsibility to fund the plans to provide pension benefits to participants. The plan sponsors can terminate the plans under the distress termination provisions and rely on the PBGC to pay guaranteed

benefits to the plan participants if the responsibility to fulfill the requirements to fund the pension plans would result in an unreasonably burdensome economic cost. However, it was not the Legislature's apparent intention that the plaintiffs look to the state guaranty fund to provide benefits for the failure of an asset within the plans.

*Id.* at 638. Thus, the Michigan Court of Appeals held that the state guaranty association was not liable for coverage of the GICs because the pension plan was protected by the PBGC. *Meyers Moving & Storage*, 566 N.W.2d at 638.

¶23. In the case sub judice, however, the Plan had already been voluntarily terminated when it sought coverage of the ELIC GIC by the MLHIGA and had not received any payments from the PBGC because there were sufficient assets in the Plan to make the guaranteed payments under ERISA to the Plan's beneficiaries. Thus, the instant case is distinguishable from *Meyers Moving & Storage* in the sense that in *Meyers Moving & Storage* there was continued protection by the PBGC when the pension plans sought coverage of the losses suffered under the GICs because the plans had not been terminated and would receive protection from the PBGC if upon termination the plans possessed insufficient assets to pay the guaranteed benefits to its beneficiaries.

¶24. In the case sub judice, however, the Plan has already been terminated, and no payments were made by the PBGC which results in the Plan never receiving any payments as a result of the losses sustained under the ELIC GIC. Therefore, the Bank correctly contends that the Plan has received no protection from the PBGC and will not receive any protection from the PBGC, and as a result, Miss. Code Ann. § 83-23-205(2)(b)(vii) should not be interpreted to exclude coverage by the MLHIGA of the GIC because the Plan has not received protection as intended by the Legislature.

¶25. In regards to the term "protection," as used in Miss. Code Ann. § 83-23-205(2)(b)(vii), the Bank contends "[i]t defies reason to suppose that the Legislature would consider a pension plan which has suffered a loss without compensation to have been 'protected' by the PBGC." The Bank further contends that the dictionary definition of the term "protect," i.e., "to cover or shield from exposure, injury or destruction" or "to save from contingent financial loss," can be used to show that the Plan was not protected by the PBGC. Merriam Webster's Collegiate Dictionary 938 (1995). The Bank asserts that the PBGC did not "shield" the Plan against injury nor did it "save [the Plan] from contingent financial loss." It is undisputed that the Plan did suffer losses and that its successor has so far been unable to meet its full contractual and fiduciary obligations.

¶26. Finally, the Circuit Court wrongly equated the intent of Congress with the intent of the Mississippi Legislature. Congress intended to protect only certain minimum benefits, not the full contractual and fiduciary obligations of a pension plan. The Mississippi Legislature has clearly stated its intent "to protect . . . against failure in the performance of contractual obligations, under . . . annuity contracts." Miss. Code Ann. § 83-23-203(1)(1991). Despite this purpose being made "subject to certain limitations," those limitations and the rest of the statute "shall be liberally construed to effect the purpose under Section 85-23-203 which shall constitute an aid and guide to interpretation." Miss. Code Ann. § 83-23-207 (1991). The circuit court erred by holding that the GIC was excluded from coverage by the MLHIGA pursuant to § 83-23-205(2)(b)(vii). Hence, this case is reversed and remanded.

### III. WHETHER THE 1990 AMENDMENT TO THE MISSISSIPPI LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT VIOLATES THE CONTRACTS

**CLAUSES OF THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS.**

¶27. Because we have reversed and remanded on other issues raised by the Appellant, there is no need to analyze the merit of this claim.

**IV. IF THE PRE-1990 ACT APPLIES, WHETHER MLHIGA'S LIABILITY IS LIMITED TO $100,000.**

¶28. We hold that the pre-1990 Act is the applicable act and that the GIC should be covered by the MLHIGA. We further hold that its liability is not limited to $100,000 pursuant to the pre-1990 Act, 1985 Miss. Laws, ch. 582 § 8(9), because the limit is inapplicable to a trustee. *UNISYS Corp. v. Pennsylvania Life & Health Ins. Guar. Ass'n*, 667 A.2d 1199, 1205 (Pa. Cmwlth. 1995), *aff'd*, 684 A.2d 546 (Pa. 1996); *Honeywell, Inc. v. Minnesota Life & Health Ins. Guar. Ass'n*, 518 N.W.2d 557, 563 (Minn. 1994).

## CONCLUSION

¶29. This Court reverses and remands the circuit court's grant of summary judgment to MLHIGA, because the MLHIGA was not entitled to judgment as a matter of law for the following reasons: (1) the pre-1990 Act governed whether the ELIC GIC was covered by the MLHIGA under Mississippi precedent and (2) Miss. Code Ann. § 83-23-205(2)(b)(vii) (Rev. 1991), did not preclude coverage of the GIC by the MLHIGA as an unallocated annuity contract purchased by an employee benefit plan that was protected by the PBGC.

¶30. **REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, ROBERTS AND WALLER, JJ., CONCUR. PRATHER, C.J., AND MILLS, J., NOT PARTICIPATING.**

1. Miss. Code Ann. § 83-23-207 (1991) states: "This article shall be liberally construed to effect the purpose under Section 85-23-203 which shall constitute an aid and guide to interpretation."