**CENTRAL BANK, Appellant,**

v.

**Anthony G. HARRIS, Receiver of Mobile Insurance Company, Appellee.**

No. 13275.

Court of Appeals of Texas, Austin.

Nov. 18, 1981.

Rehearing Denied Dec. 16, 1981.

Frank Betancourt, DeHay & Blanchard, Dallas, for appellant.

Karl L. Rubinstein, Freytag, Marshall, Beneke, LaForce, Rubinstein & Stutzman, A. M. LeCroix, State Bd. of Ins., Austin, for appellee.

SHANNON, Justice.

Appellant Central Bank filed suit in the district court of Travis County against appellee Anthony G. Harris, receiver for Mobile Insurance Company, to recover certain unearned premiums. Both parties filed motions for summary judgment. The district court denied the bank's motion, granted the receiver's motion, and rendered summary judgment that the bank take nothing.

The bank, chartered in the State of California, made loans to 880 California residents to purchase credit insurance coverage and paid the premiums for that coverage to Mobile Insurance Company. The insureds' rights to the return of any unearned premiums were assigned to the bank.

In August of 1975, the district court of Travis County placed Mobile Insurance Company in temporary receivership. Thereafter, the Insurance Commissioner of Texas designated the insurance company an "impaired insurer." Based upon a finding of insolvency, the district court of Travis County, in the autumn of 1975, placed the insurance company in permanent receivership for the purpose of liquidation. The district court's order cancelled the existing insurance policies as of October 2, 1975, and ordered that claims against the receiver of the insurance company be filed on or before January 30, 1976.

Before January 30, 1976, the bank filed with the receiver its claim as an unsecured creditor, as well as its request for payment of the unearned premiums as a "covered claim." Tex.Ins.Code Ann. art. 21.28–C § 5(2) (Vernon Supp. 1963–1980). On September 27, 1978, the receiver approved the bank's claim as an unsecured creditor, but refused to treat the bank as having a "covered claim" under the Insurance Code.

After the receiver rejected its "covered claim" status, the bank filed suit in December, 1978. The bank contended its claim was entitled to "covered claim" status pursuant to art. 21.28–C § 5(2) as it read in 1975, the date the district court placed the insurer in receivership. In 1975, art. 21.-28–C § 5(2) provided:

(2) "Covered claim" is an unpaid claim of an insured or third party liability claimant which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Act applies, issued or assumed (whereby an assumption certificate is issued to the insured) by an insurer licensed to do business in this State, if such insurer becomes an "impaired insurer" after the effective date of this Act and (a) the third party claimant or liability claimant insured is a resident of this State at the time of the insured event; or (b) the property from which the claim arises is permanently located in this State. "Covered claim" shall also include fifty percent (50%) of unearned premiums but in no event shall a "covered claim" for unearned premiums exceed Five Hundred

Dollars ($500). Individual "covered claims" shall be limited to Fifty Thousand Dollars ($50,000) and shall not include any amount in excess of Fifty Thousand Dollars ($50,000). "Covered claim" shall not include any amount due any reinsurer, insurer, insurance pool or underwriting association, as subrogation recoveries or otherwise. "Covered claim" shall not include supplementary payment obligations, including but not limited to adjustment fees and expenses, attorneys fees and expenses, court costs, interest and bond premiums incurred prior to the determination that an insurer is an "impaired insurer" under this Act.

Tex.Ins.Code Ann. art. 21.28–C § 5(2) (Vernon Supp.1976).

Article 21.28–C § 5(2) was amended effective August 29, 1977, to provide as follows:

(2) "Covered claim" is an unpaid claim of an insured or third party liability claimant which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Act applies, issued or assumed (whereby an assumption certificate is issued to the insured) by an insurer licensed to do business in this State, if such insurer becomes an "impaired insurer" after the effective date of this Act and (a) the third party claimant or liability claimant or insured is a resident of this State at the time of the insured event; or (b) the property from which the claim arises is permanently located in this State. "Covered claim" shall also include seventy-five percent (75%) of unearned premiums but in no event shall a "covered claim" for unearned premiums exceed Five Hundred Dollars ($500). Individual "covered claims" shall be limited to Fifty Thousand Dollars ($50,000) and shall not include any amount in excess of Fifty Thousand Dollars ($50,000). "Covered claim" shall not include any amount due any reinsurer, insurer, insurance pool or underwriting association, as subrogation recoveries or otherwise. "Covered claim" shall not include supplementary payment obligations, including but not limited to

adjustment fees and expenses, attorneys fees and expenses, court costs, interest and bond premiums, incurred prior to the determination that an insurer is an "impaired insurer" under this Act. With respect to a "covered claim" for unearned premiums, both persons who were residents of this State at the time the policy was issued and persons who are residents of this State at the time the company is found to be an "impaired insurer" shall be considered to have "covered claims" under this Act.

Tex.Ins.Code Ann. art. 21.28–C § 5(2) (Vernon Supp.1978).

The receiver's response was that only Texas residents qualified for "covered claims" under art. 21.28–C § 5(2) and that neither the bank nor its assignors were Texas residents. In support of his position, the receiver urged that under art. 21.28–C § 5(2), as it read either *before* or *after* the 1977 amendment, only Texas residents qualified for "covered claims."

By three points of error, the bank maintains the district court erred in concluding that it did not possess a "covered claim." Prior to amendment in 1977, § 5(2) provided that a claim was a covered claim if (1) it was one held by an insured Texas resident or third party Texas resident or (2) the claim arose from property that was permanently located in Texas. The term, "covered claim," also included a percentage of unearned premiums up to a certain dollar ceiling.

After the 1977 amendment, "covered claims" for unearned premiums under § 5(2) were defined as those held by ". . . persons who were residents of this State at the time the policy was issued and persons who are residents of this State at the time the company is found to be an "impaired insurer."

An arguable case may be made in support of the bank's position that its claim was "covered" under the section prior to amendment in 1977, since § 5(2) did not specifically limit "covered claims" for unearned premiums to Texas residents as was the case after the 1977 amendment.

**810**

Nevertheless, this Court has concluded that § 5(2), as amended in 1977, controls the disposition of the bank's claim. The plain language of § 5(2), as amended in 1977, limits "covered claims" for unearned premiums to persons who were residents of Texas when the policy of insurance was issued or who are residents at the time the insurance company is found to be an "impaired insurer." Neither the bank nor its assignors in the case at bar were residents of Texas when the policies of insurance were issued, nor were they residents of Texas at the time the insurance company was found to be an "impaired insurer." The bank's claim was filed with the receiver prior to January 30, 1976. The receiver denied the bank's application for a "covered claim" in September 1978, and the bank then filed suit in district court in December 1978.

Assuming *arguendo* the bank's claim qualified as a "covered claim" under § 5(2) prior to amendment, such right to realize a percentage return of unearned premiums was conferred solely by that legislation. That right was taken away by the 1977 amendment after it may have accrued but before the receiver had determined the bank's claim and before suit was filed. Although the bank's right may have accrued, it was not a "vested right," since the bank had not acquired title to the present or future enforcement of a demand. See *National Carloading Corp. v. Phoenix-El Paso Express*, 142 Tex. 141, 176 S.W.2d 564 (1944); *Aetna Insurance Co. v. Richardelle*, 528 S.W.2d 280 (Tex.Civ.App.1975, writ ref'd n.r.e.). It is generally agreed that rights of action based upon purely statutory grounds may be abolished by the legislature even after those rights have accrued. *National Carloading Corp. v. Phoenix-El Paso Express, supra; Aetna Insurance Co. v. Richardelle, supra; Trinity Universal Insurance Co. v. McLaughlin*, 373 S.W.2d 66, (Tex.Civ.App.1963, no writ). The points of error are overruled.

As we understand the bank's fourth point of error, it claims that § 5(2), construed and applied as contended by the re-

ceiver, denies the bank equal protection of the law required by the 14th amendment of the Constitution of the United States. Examination of the transcript shows the bank made no such contention by written motion, answer or response to the receiver's motion in district court. Such constitutional challenge appears for the first time in the bank's brief in this Court. In a summary judgment proceeding, Tex.R.Civ.P. 166–A(c) specifically provides that issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979). Accordingly, the ground asserted in point of error four was waived.

The judgment is affirmed.