Stephen S. **DURISH**, Ancillary Receiver of Union Indemnity Insurance Company of New York, Appellant,

v.

**CHANNELVIEW BANK, Appellee.**

No. 3–90–155–CV.

Court of Appeals of Texas, Austin.

April 24, 1991.

Rehearing Overruled June 12, 1991.

Catherine Brown Fryer, Bickerstaff, Heath & Smiley, Austin, for appellant.

Robert L. Lipstet, Lipstet, Singer & Hirsch, Houston, for appellee.

Before POWERS, ABOUSSIE and KIDD, JJ.

ABOUSSIE, Justice.

Appellant, Stephen S. Durish, Ancillary Receiver of the Union Indemnity Insurance Company of New York ("the Ancillary Receiver") appeals from a summary judgment. He complains that the trial court erred, as a matter of law, in rendering judgment for appellee, Channelview Bank ("the Bank"), because the Bank did not have a covered claim that accrued against the Texas Property and Casualty Insurance Association before June 15, 1985. *See* Property and Casualty Insurance Guaranty Act ("the Act"), Tex.Ins.Code Ann. art. 21.-28-C (1981 & Supp.1991). We will reverse the trial court judgment and render judgment that appellee take nothing.

*Background*

On September 10, 1984, Union Indemnity Insurance Company of New York ("Union Indemnity") issued a surety bond naming the Bank as obligee. On May 14, 1985, the Bank made demand on Union Indemnity for payment of claims under the surety bond, which were not paid. On December 2, 1985, the State of Texas placed Union Indemnity in permanent ancillary receivership; on January 10, 1986, the Commissioner of Insurance of the State of Texas declared Union Indemnity to be an "impaired insurer." The Bank filed a proof of claim with the Ancillary Receiver on April 24, 1986. This proof of claim was based upon the previously unpaid surety-bond claims of the Bank. Because Union Indemnity's assets in Texas were inadequate to pay its Texas claims, the Ancillary Receiver evaluated the Bank's claim for possible coverage under the Act. The Ancillary Receiver determined that the Bank's surety claim was not a "covered claim" under the Act and rejected the claim as not being a liability owed by the Property and Casualty Insurance Guaranty Association ("the Association"). The Bank appealed the Ancillary Receiver's rejection of its claim to the district court of Travis County. *See* Act § 18 (1981). Both parties filed motions for summary judgment in the trial court which granted the Bank's motion.

On review of a summary judgment, this Court will determine whether the movant has shown that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management, Inc.*, 690 S.W.2d 546, 548 (Tex.1985). The facts in the present cause are not at issue; the Ancil-

lary Receiver challenges the legal grounds entitling the Bank to summary judgment. The Ancillary Receiver argues that the Bank failed to meet the requirements of the Act because the Bank's claim was not a covered claim that accrued against the Association before June 15, 1985, and so the Bank was not entitled to recover from the Association under the Act. We agree that the claim was not a covered claim within the meaning of the Act. Furthermore, even if the claim were a covered claim, the Bank would not be entitled to recover against the Association because the claim did not accrue before June 15, 1985.

*The Bank's Claim was not a Covered Claim under the Act until the Insurer was Declared to be Impaired.*

■ The purpose of the Act was to provide additional protection to insureds and third-party liability claimants of insurance companies that become impaired insurers. *See* Act § 2 (1981). The Act created the Texas Property and Casualty Insurance Guaranty Association, a nonprofit legal entity composed of all stock and mutual fire insurance companies, casualty insurance companies, and fire and casualty insurance companies licensed to do business in Texas. The main purpose of the Association is to cover certain claims that cannot be paid out of the limited assets of a receivership estate.

Effective June 15, 1985, the Act was amended to eliminate Association coverage of fidelity, surety, and guaranty bonds. The amending language of the section is underlined:

This Act shall apply to all kinds of insurance.... but shall not apply to insurance written by farm mutual insurance companies.... nor to insurance that insures a municipal bond holder against loss due to default of a political subdivision in the repayment of a municipal bond, nor to fidelity, surety, and guaranty bonds ....

1985 Tex.Gen.Laws, ch. 904, § 1, at 3030 [Tex.Ins.Code art. 21.28–C, since amended]. Thus, after June 15, 1985, the Act would no longer cover a surety bond, such as the one

at issue here, and no such claim is payable from the Association's funds.

The question presented is whether the Bank's claim against the Ancillary Receiver was preserved by a saving clause, also enacted as part of the 1985 legislation:

This Act [the amendment to omit surety bond coverage] applies only to covered claims that accrue on or after the effective date of this Act [June 15, 1985]. Covered claims that accrue before the effective date of this Act are governed by the law as it existed at the time the covered claim accrued and that law is continued in effect for that purpose.

1985 Tex.Gen.Laws, ch. 904, § 6, at 3032. Thus, if the claim were a covered claim, it must also have accrued before June 15, 1985, in order to be payable.

By June 15, 1985, the Bank had made demand against Union Indemnity, but Union Indemnity was not placed in receivership until December 2, 1985, nor declared to be an impaired insurer until January 10, 1986. The Bank argues that its demand on Union Indemnity was sufficient to constitute a covered claim that accrued before June 15, 1985, and thus, the saving clause preserved the Bank's claim against the Association under the pre–1985 version of the Act.

■ We disagree. The date for determining whether a claim is a covered claim under the Act is the date of impairment. Our conclusion is based upon our understanding of the text, the structure of the Act, and the relevant case law. In construing the Act, we must follow the fundamental rule that legislative intent should be ascertained from the entire Act, and not from its isolated parts. *See Merchants Fast Motor Lines, Inc. v. R.R. Comm'n,* 573 S.W.2d 502, 505 (Tex.1978). "In interpreting a statute, a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil and the remedy." Tex.Gov't Code Ann. § 312.005 (1988). If ambiguity exists, the proper rule of construction requires that it be resolved in favor of the primary object of the statute. *Hayek v. Western Steel Co.,* 478 S.W.2d 786, 795 (Tex.1972).

The primary object of the Act is to provide funds in addition to assets of impaired insurers for the protection of the holders of covered claims. Act § 2 (1981). The Act does not purport to cover all circumstances in which insureds attempt to recover claims against insolvent insurers. The Act sets forth several criteria for coverage and carves out numerous exceptions.[1] It is apparent from the definitional section that a prerequisite for any covered claim is that the insurer be impaired:

> "*Covered claim*" *is an unpaid claim* of an insured or third party liability claimant which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Act applies, ... *if such insurer becomes an "impaired insurer"* after the effective date of this Act and (a) the third party claimant or liability claimant or insured is a resident of this State at the time of the insured event; or (b) the property from which the claim arises is permanently located in this State.

Act § 5(2) (Supp.1991) (emphasis added).

Section 5(2) is particularly important because the definition of a term in the definitional section of a statute controls the construction of that term wherever it appears in the statute. 1A Singer, Sutherland Statutory Construction § 20.08 at 14 (4th ed. Supp.1991); *see also* Tex.Gov't Code Ann. § 311.011(b) (1988). The Bank argues that the word "becomes" suggests that the legislature anticipated the existence of covered claims before impairment. We reject this explanation. The use of the word "becomes" denotes that the Act does not apply to insurance companies in receivership or conservatorship before the effective date of the Act.[2] The significant words in this subsection are "if" and "after." Unless the insurer becomes an impaired insurer after the effective date, an otherwise eligible claim is not a covered claim within the meaning of the Act.

The only case construing this section holds that an otherwise eligible claim is not a covered claim for the purposes of the Act unless the insurer is impaired. "The plain language of § 5(2) ... limits 'covered claims' for unearned premiums to persons who were residents of Texas when the policy of insurance was issued or who are residents *at the time the insurance company is found to be an 'impaired insurer.'*" *Central Bank v. Harris*, 623 S.W.2d 807, 810 (Tex.App.1981, no writ) (emphasis added). *See also Louisiana Guar. Ass'n v. Guglielmo*, 276 So.2d 720, 726 (La.Ct. App.1973) (decreeing an insurer insolvent as the sole operative factor upon which the Association's liability attaches); *Mississippi Ins. Guar. Ass'n v. Gandy*, 289 So.2d 677, 682 (Miss.1973) (controlling factor held to be the insolvency of the insurance company after the effective date of the act, not when the claims arose) (both construing similar statutes).

The structure of the Act, including its amendments, also reveals that the date of designation of impairment is the key date; that designation triggers a variety of actions by the Association. Under the Act, an insurer is not impaired until the Commissioner of Insurance designates it an impaired insurer. Act § 5(4) (1981). Upon determination of impairment, the receiver notifies the insureds of the determination and of their rights (Act § 6 (Supp.1991)), marshals all assets (Act § 10 (1981)), approves covered claims (Act § 11 (1981)), and pays covered claims (Act § 10 (1981)). The determination that an insurer has become impaired may also initiate assessments against members of the Association (Act § 7 (Supp.1991)).

In addition, another statutory provision reveals, by implication, that the date of impairment is the controlling date. Section 7B, titled "Emergency claims," provides for paying those claims that meet certain criteria. One criterion is that the claims "would be covered claims if the insurer

---

**1.** Among the restrictions are limits on the amount payable on claims, on eligible claimants, on the lines of insurance which the Association will cover, and on the types of insurance companies whose policies will have Association protection. *See* Act § 5(2) (Supp.1991).

**2.** See the definition of "impaired insurer," Act § 5(4) (1981).

was declared an impaired insurer." Act § 7B(a)(1) (Supp.1991). The wording of this subsection is consistent with our interpretation that under the Act a covered claim cannot exist unless the insurer is an impaired insurer. If covered claims were possible in the absence of impairment, then § 7B would be unnecessary.

The only provision that seemingly contradicts our interpretation is the first clause of § 6. The section is entitled "Termination of policies," which suggests that it applies to the special case of insureds who replace or cancel their policies. We will quote the entire paragraph to show the context of the clause that the Bank relies upon:

> This Act shall apply to covered claims existing prior to the determination that an insurer is an impaired insurer and to covered claims arising within thirty (30) days after the determination of impairment, or before the policy expiration date if less than thirty (30) days after the determination of impairment, or before the insured replaces the policy or effects its cancellation, if he does so within thirty (30) days of the determination of impairment.

Act § 6 (Supp.1991).

"In ascertaining legislative intent, the entire act must be examined, not just isolated provisions in the act." *Ex parte Abell*, 613 S.W.2d 255, 258 (Tex.1981). If there are inconsistent interpretations, the court should use the interpretation that offers the greatest harmony and least inconsistency. 2A Singer, *supra*, § 46.05, at 90 (4th ed. 1984). We reject the Bank's interpretation that covered claims can exist prior to impairment because it contradicts the definitional section and various other provisions of the Act. Instead of making the declaration of impairment irrelevant to the determination of when a claim is a covered claim, we hold that the first clause of § 6 merely reiterates that the Act applies to otherwise eligible claims *if and when* the insurer becomes impaired.

*The Bank's Claim Did Not Accrue as to the Association Before June 15, 1985.*

■■■ The saving clause to the 1985 amendment added an additional require-ment for surety bond claims. Not only must they be covered claims, but they must have "accrued" before June 15, 1985. The fact that the legislature enacts an amendment indicates that it thereby intended to change the original act by creating a new right or withdrawing an old one. 1A Singer, *supra*, § 22.30, at 265 (4th ed. 1985). A saving clause, such as § 6 of the 1985 amendment, preserves certain rights, remedies, or privileges that the general enactment would otherwise destroy. *Id.* § 20.22 at 108. The Bank urges that, because § 6 does not explicitly refer to impairment, impairment of the insurer before June 15, 1985, is not a prerequisite to recovery under the amendment. We reject this contention because the claim must have accrued as to the Association before the effective date of the amendment and only claims that were covered claims within the meaning of the statute could accrue against the Association. Our interpretation is consistent with the requirement that a claim must be a covered claim, and we adopt it for several reasons.

First, the legislature uses the term "covered claim" three times in § 6. This suggests that § 6 saves *only* covered claims as defined in § 5(2) of the original Act. *See* 1971 Tex.Gen.Laws, ch. 360, § 1, art. 21.-28–C, § 5(2) [Tex.Ins.Code Ann. art. 21.28–C, § 5(2), since amended]. As described above, we find that, under the original act, a prerequisite for a claim to be a covered claim is that the Commissioner declare the insurer to be impaired.

Second, holding that the date of impairment is irrelevant to § 6 would give the saving clause a broader meaning than the original Act. As we construe the Act, on June 14, 1985, the Bank had no claim against the Guaranty Fund, but only an expectancy that if the insurer became impaired, then it might have a covered claim against the Fund *at that time*. On June 15, that expectancy was cut off by the amendment to the Act. The saving clause served only to protect those who had covered claims against the Fund, not to create new rights for others.

Third, the Bank's interpretation would vitiate the amendment that excludes surety bonds from coverage. Under the Bank's interpretation, any unpaid claim, if it met the other criteria for a "covered claim," could be presented to the Guaranty Fund when the insurer was declared impaired, even years after enactment of the amendment that supposedly excluded such policies from coverage. Because the purpose of the amendment was to exclude surety claims from coverage, it seems unlikely that the legislature meant to preserve potential claims indefinitely. Unreasonableness of the result produced by an interpretation of a statute is a sufficient basis for rejecting that interpretation in favor of the alternative that would produce a reasonable result. 2A Singer, *supra*, § 45.12, at 54 (4th ed. 1984).

Before the 1985 amendments, only covered claims asserted against impaired insurers could be brought against the Association. The effect of the 1985 amendment excluding coverage for surety bonds was to create a window of coverage from the original effective date of the Act (May 25, 1971) to the effective date of the amendment (June 15, 1985). If the insurer was designated as impaired between those two dates, and if a claim met all other criteria for covered claims, then the Act applied and such claims, as "accrued" claims, could be paid by the Fund.

The Bank urges that its construction is preferable because it avoids giving an undesirable retroactive effect to the amendment. We are to presume that the legislature intended the amendment to operate prospectively, not retroactively, unless the terms of the enactment clearly show a contrary intention. *Covington v. Covington*, 271 S.W.2d 849, 850 (Tex.Civ. App.1954, no writ). Here, however, the terms of the saving clause make it apparent that the legislature intended for the amendment to apply to past transactions because the saving clause only preserves a certain class of existing claims.

The legislature may abolish rights of action based upon purely statutory grounds even after those rights have ac-

crued. *Central Bank*, 623 S.W.2d at 810. In the hypothetical posed in *Central Bank*, the court held that even though the bank's right may have accrued, it was not a "vested right," because the bank had not acquired title to the present or future enforcement of a demand. *Central Bank*, 623 S.W.2d at 810. Retroactive laws are permitted where no vested right is destroyed thereby. *Abell*, 613 S.W.2d at 258; *Aetna Ins. Co. v. Richardelle*, 528 S.W.2d 280 (Tex.Civ.App.1975, writ ref'd n.r.e.). In the present cause, the claim did not even accrue in time.

If we reverse the judgment of the trial court, we must render the judgment that the court should have rendered unless it is necessary to remand the cause for further proceedings. Tex.R.App.P.Ann. 81(c) (Supp.1990). Thus, we are authorized to grant summary judgment for a party whose summary-judgment motion was denied, if all the real parties have filed motions for summary judgment, and the appeal is prosecuted from a judgment granting one or more of the motions. *Ackermann v. Vordenbaum*, 403 S.W.2d 362, 365 (Tex.1966). Of course, such a party must prove that there is no material issue of fact and that it is entitled to judgment.

The Ancillary Receiver has shown that he is entitled to judgment. He moved for summary judgment on the ground that no genuine issue exists as to any material fact and that he was entitled to judgment as a matter of law because the surety claim was not a covered claim that accrued before the effective date of the 1985 amendment and, therefore, could not be paid by the Texas Property and Casualty Insurance Guaranty Fund.

The judgment of the trial court is reversed and judgment rendered that appellee take nothing.

POWERS, J., not participating.