**OKLAHOMA LIFE & HEALTH INSURANCE GUARANTY ASSOCIATION, Appellee,**

v.

**The HILTI RETIREMENT SAVINGS PLAN & Bancoklahoma Trust Company, Inc., Appellants.**

No. 82447.

Supreme Court of Oklahoma.

March 11, 1997.

Rehearing Denied June 20, 1997.

Theodore Q. Eliot, Tulsa, Marvin York, Oklahoma City, for Appellants.

Michael D. Coleman, James W. Rhodes, Oklahoma City, for Appellee.

HODGES, Justice.

The issues in this case are (1) whether the 1988 amendments to the Oklahoma Life and Health Insurance Guaranty Act, Okla.Stat. tit. 36, §§ 2021–43 (1991) (1991 Act), or the pre-amended Act, Oklahoma Life and Health Insurance Guaranty Act, Okla.Stat. tit. 36,

§§ 2021–43 (Supp.1987) (1987 Act), is the applicable statutory authority, and (2) whether the Guaranteed Annuity Contracts which are the subject of this lawsuit are covered by the applicable act.

## I. THE FACTS

On December 14, 1987, Bancoklahoma Trust Company, the trustee of the Hilti Retirement Savings Plan (Plan), signed an agreement with Executive Life Insurance Company (ELIC) to invest money from the Plan in what is termed in the industry guaranteed investment contracts (GICs). GICs are one form of unallocated annuity contracts. The agreement showed the date of issue as October 9, 1987. Then again on May 16, 1988, the trustee signed another such agreement with ELIC with the date of issue as November 1, 1987.

A GIC is a contract wherein the trustee invests funds in an unallocated annuity contract, thus named because none of the funds are allocated to any individual. In this case, each employee had the choice of several investments. The employees usually diversified their investments, with only a portion of their money in the GICs and the remaining in either stocks, mutual funds, CDs, etc. The interest rate on the GICs was guaranteed by ELIC.

The trustee of the Plan was the owner of the GICs and, as such, was the only person who could withdraw money from the GICs and who had any control over the GICs. If an employee changed the allocation from the GIC to another investment, the trustee had the *discretion* to withdraw funds so as to make the change in investments. If an employee retired during the term of the GIC contract, the trustee also had the *discretion* to direct ELIC to purchase an individual annuity contract for that employee. Further, under the GIC contracts, the trustee was the only person to whom ELIC owed any duty.

Although it appears ELIC paid a membership fee to the Oklahoma Life and Health

Guaranty Association (Association) because it also sold life insurance policies, the record is absent any evidence that ELIC paid premiums under section 2030 of title 36 of the Oklahoma Statutes on the GICs. Likewise the record is void of any evidence that the Association attempted to collect premiums on the GICs.

In 1991, ELIC failed and the insolvency proceedings were instituted in the California courts. The Plan and the trustee petitioned the Association for coverage under the Oklahoma Life and Health Insurance Guaranty Act, Okla.Stat. tit. 36, §§ 2021–43 (Supp.1987 & 1991). The Board of Directors for the Association rejected the claim and, in anticipation of other claims resulting from ELIC's insolvency, filed a declaratory judgment action. Finding that GICs were not covered by the Act, the trial court, Honorable Niles Jackson, entered summary judgment for the Association. The Court of Civil Appeals affirmed. This Court granted certiorari.

## II. ANALYSIS

A. The 1991 Act applies to the unallocated annuity contracts (the GICs) in this case.

 The 1987 Act does not apply because ELIC was not insolvent until 1991. Section 2028 of the 1987 and 1991 Acts provides for payments by the Guaranty Association for covered policies of impaired or insolvent insurers. Subsection 2024(7) of both Acts defines an "insolvent insurer" as one who *"after the effective date of th[e] Act,* is placed under an order of liquidation by a court of competent jurisdiction with a finding of insolvency". (Emphasis added.)[1] Because ELIC did not become insolvent, i.e. had not been found to be insolvent by a court of competent jurisdiction, until after the effective date of the 1991 Act, both of the unallocated annuity contracts at issue in the case are governed by the 1991 Act.

Other courts have reached this same conclusion when considering similar statutory language in cases involving guaranty associations: *Collins v. Cumberland Gap Provision*

---

**1.** Subsection 2024(6) of both Acts defines an "impaired insurer" as one who is deemed by the Commissioner *"after the effective date of this act"* as unable to fulfill its contractual obligations. Because the Commissioner has not made a finding of impairment, this provision is not utilized.

*Co., Inc.,* 754 S.W.2d 864 (Ky.Ct.App.1988) (worker's compensation claim); *Durish v. Channelview Bank,* 809 S.W.2d 273 (Tx Ct. App.1991) (surety bond); *see Aetna Life Ins. Co. v. Washington Life and Disability Ins. Guar. Ass'n,* 83 Wash.2d 523, 520 P.2d 162, 170 (1974).

**B.** The 1991 Act excludes GICs, otherwise known as unallocated annuity contracts, from coverage.

1. Clear statutory language shows the Oklahoma Legislature intended to exclude unallocated annuity contracts from coverage.

Section 3(b)(1) of the 1985 Model Act provides coverage for unallocated annuity contracts, including GICs, which it defines as "any annuity contract or group annuity certificate which is not issued to and owned by an individual, except to the extent of any annuity benefits guaranteed to an individual by an insurer under such contract or certificate." Life and Health Guaranty Association Model Act § 3(b)(1) (National Association of Insurance Commissioners 1985) (1985 Model Act). The Oklahoma Legislature used this same definition in subsection 2025(B)(2)(g) of the 1991 Act and excluded unallocated annuity contracts from coverage.

Subsection 2025(B)(2)(g) of the 1991 Act provides:

This act shall not provide coverage for … any annuity contract or group annuity certificate which is not issued to and owned by an individual, except to the extent of any annuity benefits guaranteed to an individual by an insurer under such contract or certificate....

It would have been difficult for the Oklahoma Legislature to have been more explicit that it intended to exclude unallocated annuity contracts (GICs) from coverage. Clearly the GICs were intended to be excluded from coverage by the 1991 Oklahoma Act.

*Bennet v. Virginia Life, Accident and Sickness Insurance Guaranty Ass'n,* 251 Va. 382, 468 S.E.2d 910 (1996), is directly on point. Section 38.2–1700(C)(5) of chapter 17 of the Virginia statutes exempted from coverage "[a]ny contract or certificate which is not issued to and owned by an individual, except to the extent of … any annuity benefits guaranteed to an individual by an insurer under such contract or certificate." This is the same language used in the 1991 Oklahoma Act. The Virginia Supreme Court held that, under this provision, GICs were not covered by Virginia's Guaranty Act. Likewise, GICs are excepted from coverage under the Oklahoma Act.

2. Implied statutory language shows the Oklahoma Legislature intended to exclude unallocated annuity contracts from coverage.

The 1985 Model Act and other states' statutes which provide for coverage of unallocated annuity contracts, including GICs, provide a maximum liability exposure for the Guaranty Association. Ark.Stat. § 21.79.025(3) (1995) ($5,000,000 limit); Cal. Insurance Code § 1067.02(c)(2)(C) (1995) ($5,000,000 limit); Conn.Gen.Stat. § 38a–860(c)(2)(C) (1995) ($5,000,000 limit); Del.Code.Ann.Tit. 18 § 4403(c)(2)(c) (1995) ($1,000,000 limit); Ga.Code Ann. § 33–38–7(9) (1996) ($5,000,000 limit); Ill.Rev.Stat. ch. 215, para. 5/531.03(3)(b)(iii) (1996) ($5,000,000 limit); Ind.Code § 27–8–8–5 (1996) (($5,000,000); Mich.Comp.Laws § 500.7704(4)(d) (1996) ($5,000,000 limit); Minn.Stat. § 61B.19(4)(6) (1996) ($7,500,000 limit); Miss.Code Ann. § 83–23–205(3)(b)(iii) (1995) ($5,000,000 limit); Mont.Code Ann. § 33–10–224(2)(c) (1995) ($5,000,000 limit); N.H.Rev.Stat.Ann. § 408–B:5(III)(b)(4) (1995) ($5,000,000 limit); N.C.Gen.Stat. § 58–62–21 (1995) ($5,000,000 limit); N.D.Cent.Code § 26.1–38.1–01(4)(d) (1995) ($5,000,000 limit); Ohio Rev.Code Ann. § 3956.04(C)(2)(c) (1996) ($1,000,000 limit); Or.Rev.Stat. § 734.810(10) (1995) ($5,000,000 limit); 40 Pa.Stat. § 991.1703(c)(1)(ii)(C) ($5,000,000 limit); R.I.Gen.Laws § 27–34.3–3(C)(2)(d) (1995) ($5,000,000 limit); Tex.Ins. Code Ann. Art 21.28–D, § 5(3)(B) (1996) ($5,000,000 limit); Utah Code Ann. § 31A–28–103(2)(c)(iii) (1996) ($5,000,000 limit); Vt. Stat.Ann.Tit. 8, § 4158(8)(B)(iii) ($1,000,000 limit); Wash.Rev.Code § 48.32A.020(3)(b) (1995) ($5,000,000 limit).

In section 3(b)(2)(B), the 1985 Model Act recommends the following: "Provided, how-

ever, that in no event shall the Association be liable to expend more than the $300,000 in the aggregate with respect to any one life under subsection (a), (b), and (c) above: (B) with respect to any one contract holder, $5,000,000 in unallocated annuity contract benefits, irrespective of the number of such contracts held by the contract holder." Oklahoma's statute does not provide this limitation. Because the Oklahoma Legislature categorically excepted unallocated annuity contracts (including GICs) from coverage, it did not need to provide a limitation for the Guaranty Association's liability for such contracts. *See* Okla.Stat. tit. 36, § 2025(C) (1991).

The Oklahoma Legislature also rejected the 1985 Model Act's provision establishing a fund for unallocated annuity contracts. Section 6(a) of the 1985 Model Act provides for four funds: (1) a life insurance account, (2) a health insurance account, (3) an annuity account, excluding unallocated annuity contracts, and (4) an unallocated annuity contract account. Likewise, the states that include coverage for unallocated annuity contracts provide for a separate account.

Because Oklahoma rejected coverage for unallocated annuity contracts, the 1991 Act provides for only three of the four accounts recommended by the 1985 Model Act. Those are: (1) a health insurance account, (2) a life insurance account, and (3) an annuity account. In fact, the Oklahoma Legislature rejected all the 1985 Model Act's provisions which would include unallocated annuity contracts in the coverage of the 1991 Act.

Oklahoma also rejected the 1985 Model Act provision that the Guaranty Act should be liberally construed. 1985 Model Act, § 4. Rather, the Oklahoma Legislature opted for a provision that the 1991 Act should be strictly construed. Okla.Stat. tit. 36, § 2025(D) (1991). ("The liability of the Association is strictly limited by the express terms of such covered policies and contracts and by the provisions of this act....") This change from the Model Act points out that the Oklahoma Legislature did not intend to provide coverage beyond that which is specifically set out in the 1991 Act.

3. Oklahoma's case law supports the conclusion that the 1991 Act does not cover unallocated annuity contracts, including GICs.

The 1991 Act is clear that it does not provide coverage for unallocated annuity contracts, including GICs. However, if it were unclear, this Court should nonetheless determine that the 1991 Act does not provide the requested coverage for GICs.

 It is the long-standing rule in Oklahoma that an agency's contemporaneous interpretation of an ambiguous or uncertain statute is "entitled to the highest respect from the courts." *Cox v. Dawson,* 911 P.2d 272, 277 (Okla.1996); *see McCain v. State Election Board,* 144 Okl. 85, 289 P. 759, 763 (1930). Although the Guaranty Association is not technically an agency, it acts in a similar capacity. It is a creation of the Legislature and its authority is limited by the Oklahoma Statutes. Thus the Guaranty Association's interpretation of a statute should be treated like that of an agency.

Upon the enactment of the 1991 Act, the Guaranty Association determined that unallocated annuity contracts were not covered by the Act. As a result, the Association has never provided coverage for unallocated annuity contracts. The Association has consistently applied this interpretation of the 1991 Act. The Association's interpretation of the 1991 Act should be given "great respect", the result of which would be that unallocated annuity contracts, including the GICs at issue in the case, are not protected under the Act.

This is most likely the reason that any evidence that ELIC paid premiums on the GICs is absent from the record. The fact that ELIC did not pay premiums on the GICs is supported by statutory authority. Section 2030 of the Act provides that members are assessed separately for each account. The 1991 Oklahoma Act, unlike other states and the Model Act, does not provide for an account for unallocated annuity contracts. Thus, the Association would not have been authorized under the Act to collect premiums on the GICs. But for the fact that ELIC also sold life insurance policies, it

would not have been a member of the Association, and the GICs would have been excluded from coverage under this Court's holding in *Policy Holders of American Indemnity Trust v. Oklahoma Life and Health Insurance Guaranty Association,* 825 P.2d 1341 (Okla.1992).

Likewise legal authorities agree that the Oklahoma Act does not provide protection for GICs. The Practicing Law Institute at page 4–5 of its *Tax Law and Estate Planning Course Handbook Series* states: "States specifically excluding all GICs.... Oklahoma."

### C. Purpose of the Act

Section 2022 of both Acts states: "The purpose of this act is to protect, *subject to certain limitations,* persons ... against failure in the performance of contractual obligations, under [specified] life and health insurance policies and annuity contracts ... because of the impairment or insolvency of the member insurer that issued the policies or contracts." (Emphasis added.) The purpose of both the Oklahoma Acts is to cover only certain claims, those specified in the Acts which does not include the GICs at issue in this case.

### D. Conclusion

The GICs which are the subject of this dispute are governed by the 1991 Oklahoma Act which rejects their coverage. Therefore, the opinion of the Court of Civil Appeals is vacated and the judgment of the trial court is affirmed.

CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS' OPINION VACATED; JUDGMENT OF TRIAL COURT AFFIRMED.

SIMMS, HARGRAVE, OPALA and ALMA WILSON, JJ., concur.

KAUGER, C.J., concurs in part; dissents in part.

SUMMERS, V.C.J., and LAVENDER, and WATT, JJ., dissent.

WATT, Justice, with whom SUMMERS, Vice Chief Justice and LAVENDER, Justice, join dissenting.

### I.

In attempting to glean the intent of the Legislature from the language of the 1988 Oklahoma Act its terms should be compared to those of the National Association of Insurance Commissioners' Life and Health Guaranty Association Model Act of 1985, and to the versions of the Model Act passed by some of our sister states.

The Model Act defines the term "unallocated annuity contract," creates an unallocated annuity contract account, and expressly provides coverage under the Model Act for unallocated annuity contracts. More than thirty states and the District of Columbia have either incorporated the definition of an "unallocated annuity contract" in their versions of the Model Act, *or have said that a "guaranteed investment contract" is an "unallocated annuity contract," thereby expressly excluding them from coverage.*[1] The Oklahoma Legislature has done neither.

Most states that have passed the 1985 version of the Model Act have expressly included coverage for unallocated annuity contracts. Some, though, have excluded such coverage. Several states that have excluded unallocated GICs, or other annuity contracts from coverage have also excluded the premiums collected on such contracts from assessment under the Act.

California passed an amendment to its act that generally excluded most GICs and unallocated annuity contracts from coverage, but expressly included coverage for GICs, the definition of which could have been only

---

1. The statutes I have found that incorporated a definition of the term "unallocated annuity contract" in their Life and Health Guaranty Acts, or reciting that a "guaranteed investment contract" is an "unallocated annuity contract, are from the following states: Arkansas, Alaska, California, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Michigan, Minnesota, Missouri, Montana, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, Tennessee, Utah, Vermont, Washington, and West Virginia.

those GICs sold by Executive Life Insurance Company. Cal.Ins.Code § 1067.02(b)(2)(E) (1994). Of greater interest, however, is the fact that the California statute expressly prohibits a seller of unallocated annuity contracts from offering such contracts for sale to an employer unless the insurer has "disclosed to the employer, and employees in writing in a conspicuous manner that the contract is not covered by the [guaranty] association." Cal.Ins.Code § 1067.02(e) (1994). Similarly, both the Kansas statute, Kan.Stat.Ann. § 40–3005(j) (1986), and Florida act, Fla.Stat. § 631.713(3)($l$) (1995), expressly exclude premiums from unallocated annuity contracts from assessment by the guaranty association.

To the extent that premiums from unallocated annuity contracts are annuities, the Oklahoma Act makes them subject to assessment because the definitions section of the Oklahoma Act, 36 O.S.1991 § 2024 11, excludes from the definition of the term "premium" neither GICs nor any other kind of unallocated annuity contract.

The majority relies on. a recent case that construed a form of the 1985 version of the act as it applied to GICs sold by an insurer other than Executive Life Insurance Company. In *Bennet v. Virginia Life, Accident and Sickness Insurance Guaranty Association*, 251 Va. 382, 468 S.E.2d 910 (1996), the Supreme Court of Virginia held that the exclusion of policies "not issued to and owned by an individual, except to the extent of (I) any annuity benefits guaranteed to an individual by an insurer under such contract or certificate …," excluded the GICs involved there. The opinion also held that those GICs were not annuities. There has been unanimous agreement among the opinions we have found that Executive Life Insurance Company GICs are annuities. *Board of Trustees of the Maryland Teachers & State Employees Supplemental Retirement Plans v. Life and Health Insurance Guaranty Corporation*, 335 Md. 176, 642 A.2d 856 (1994); and *Unisys Corporation v. Pennsylvania Life and Health Insurance Guaranty Association*, 667

A.2d 1199 (Pa.Cmwlth.1995). The Virginia opinion neither. analyzed the differences between the Virginia statute and the Model Act, nor even recognized that a Model Act exists. For the reasons discussed in this dissent I believe that this Court should decline to accept the Virginia Court's analysis of this issue.

The Model Act defines "unallocated annuity contract" as "any annuity contract or group annuity certificate which is not issued to or owned by an individual by an insurer under such contract or certificate." The Oklahoma Act includes neither the foregoing definition, nor the term "guaranteed investment contract." Title 36 O.S., 1991 § 2025 B 2 g, however, provides, "This act shall not provide coverage for:"

> any annuity contract or group annuity certificate which is not issued to and owned by an individual, except to the extent of any annuity benefits guaranteed to an individual by an insurer under such contract or certificate.

The interpretation of this language is the crux of this appeal. Does the foregoing language describe the Executive Life Insurance Company GICs at issue here? The answer is that the Act is ambiguous because GICs are not mentioned in the Oklahoma Act. The purpose of the Act is to protect insureds against loss because of the "failure in the performance of contractual obligations under life and health insurance policies and *annuity contracts*." The Executive Life GICs were annuity contracts, so the ambiguity of the Act should be resolved in favor of the Plan's members. The GICs should be held to be covered by the Act because they were not expressly excluded from coverage.

The vagueness of the quoted language, coupled with the Act's clearly stated policy to protect annuitants from loss through the failure of life and health insurers [2] convinces me that the Oklahoma Legislature did not intend to exclude from the protection of the act the Executive Life Insurance Company GICs. Those GICs were bought with the funds of Hilti's plan participants, and the premiums

---

**2.** The purpose of the Act is to protect insureds from loss because of "failure of performance of contractual obligations under life and health in-

surance policies and annuity contracts." 36 O.S. 1991 § 2022 A.

used to buy them were subject to assessment under the Act. Plan participants had the right to direct their investments in the GICs. These GICs were clearly annuities. Given these circumstances, I believe that had the Legislature intended to exclude these GICs, which were bought with the funds of plan participants who bore the ultimate risk of loss, it would have said so. The Legislature would have expressly excluded the premiums from such contracts from assessment had it intended that GICs not be covered under the Act. There is nothing in the 1988 amendments to the Oklahoma Act to convince me that the Oklahoma Legislature intended to deprive Hilti Plan participants of coverage of the GICs BancOklahoma Trust Company bought for their benefit.

The majority's decision turns legislative construction on its head by interpreting an ambiguous statute in a way that hurts the very people the legislation was passed to help.

## II.

At a minimum, I would remand this case for trial. The Plan should have the opportunity to present further proof on the issue of whether premiums it paid on the Executive Life GICs were subject to assessment and whether it paid any assessments on them. The record is unclear on the issue of just what the Plan's liability for assessments against the GIC premiums was. To deprive the Plan of the opportunity to develop further facts on this critical issue serves only to compound the unfairness of the majority opinion.

I dissent.